```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EQUAL EMPLOYMENT OPPORTUNITY          :
COMMISSION,                           :   Civil Action No: 14-cv-3673
                                      :
                    Plaintiff,        :
        v.                            :
                                      :   COMPLAINT AND
UNITED HEALTH PROGRAMS OF             :   JURY DEMAND
AMERICA, INC. AND                     :
COST CONTAINMENT GROUP, INC.,         :
                                      :
                    Defendants.       :
------------------------------------------------------------x
```

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of religion and to provide appropriate relief to Charging Parties Elizabeth Ontaneda, Francine Pennisi, Faith Pabon and a class of similarly aggrieved individuals who were adversely affected by such practices. As alleged with greater particularity in paragraph 11 below, Defendants United Health Programs of America, Inc. and Cost Containment Group, Inc. ("Defendants") subjected Ontaneda, Pennisi, Pabon and other employees to a hostile work environment based on religion, failed to accommodate them based on their own religions or lack thereof, terminated them based on religion, and retaliated against them for opposing required religious practices in the workplace. Defendants also constructively discharged some employees who were compelled to leave instead of continuing to take part in required religious practices.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of New York.

3. Plaintiff, Equal Employment Opportunity Commission (the "Commission" or "EEOC"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706 (f)(1) and (3) of Title VII, 42 U.S.C. §§2000e-5 (f)(1) and (3).

4. At all relevant times, Defendants have been Delaware corporations doing business in the State of New York and have jointly and continuously had at least 15 employees.

5. At all relevant times, Defendants have continuously engaged in an industry affecting commerce within the meaning of Sections 701 (b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

6. At all relevant times, Defendants employed Ontaneda, Pennisi, Pabon and the other aggrieved individuals.

## STATEMENT OF CLAIMS

7. More than thirty days prior to the institution of this lawsuit, Charging Parties Ontaneda, Pennisi, and Pabon filed EEOC charges with the Commission alleging violations of Title VII by Defendants.

8. The Commission issued to Defendants a Letter of Determination dated March 13, 2014, notifying Defendants that the Commission found reasonable cause to believe that Defendants had discriminated against Ontaneda, Pennisi, Pabon and other aggrieved individuals based on religion.

9. The conciliation efforts required by law have occurred and were unsuccessful.

   a) On March 13, 2014, the Commission issued to Defendants a Letter of Determination inviting Defendants to join with EEOC in informal methods of conciliation.

   b) On April 22, 2014, EEOC issued a Notice of Conciliation Failure advising Defendants that despite its efforts EEOC was not able to secure an agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been met.

11. Beginning in the fall of 2007, Defendants have engaged in unlawful employment practices at their Syosset, Long Island worksite, in violation of Sections 701(j) and 703(a) of Title VII, 42 U.S.C. §§ 2000e and 2000e-2. These practices include but are not limited to the following:

   (a) Defendants have required employees to engage in practices pursuant to a belief system called "Harnessing Happiness" or, more commonly, "Onionhead." Onionhead-related religious practices that Defendants require employees to participate in have included, but are not limited to, praying, reading spiritual texts, discussing personal matters with colleagues and management, burning candles, and keeping dim lighting in the workplace. Other examples of required Onionhead practices have included prayer circles, asking employees to thank God for their employment, and saying "I love you" to management and colleagues.

   (b) Defendants have required employees to take part in Onionhead practices on a daily basis and have held Onionhead-related meetings on a weekly basis. For example, employees have been asked on a daily basis to select Onionhead-

related cards and keep them next to their computer monitors and to wear Onionhead-related pins. Ontaneda, Pennisi, Pabon and other aggrieved individuals did not want to participate in these practices on a regular and routine basis and experienced these practices as both religious and as mandatory.

(c) The aunt of Defendants' owner and a member of Defendants' upper management team, "Denali," is the leader of these Onionhead practices and Defendants asked her to make monthly visits to the workplace. During her visits, employees have been required to attend one-on-one sessions with her and read and discuss literature about "divine plans," "moral codes" and "enlightenment." Ontaneda, Pennisi, Pabon and other aggrieved individuals also have been given homework related to their readings to complete and discuss.

(d) Ontaneda, Pennisi, Pabon and other aggrieved individuals have felt pressured and coerced into participating in Onionhead-related religious activities and have endured a hostile work environment as a result.

(e) Defendants failed to accommodate Ontaneda, Pennisi, Pabon and other aggrieved individuals' own religious beliefs or lack thereof. Defendants compelled employees to take part in Onionhead-related religious activities on a routine basis to maintain their employment with Defendants. Ontaneda, Pennisi, Pabon and other aggrieved individuals made known their opposition to Onionhead related religious practices to Defendants and faced termination for this reason.

(f) Pennisi worked for Defendants as an Account Manager/ IT Project Manager, starting in November 2004. She spoke against Onionhead-related practices at a managers' meeting in July 2010, stating that she was Catholic and

did not want to participate in the Onionhead spiritual activities. On or around August 23, 2010, during Denali's next monthly visit, Defendants moved Pennisi from an office to a desk in the open area on the customer service floor and changed her responsibilities to include answering phones. Pennisi was told that the other managers would be helping with calls too but that did not occur. As soon as Denali moved Pennisi out of the office, Denali placed a large statute of a Buddha in the empty office. Pennisi called in sick the next day and Defendants' owner called her at home. During the telephone call, Pennisi said that she felt like she had been demoted and embarrassed in front of the other employees, and the owner responded that she should not come back; he fired her.

(g)     Ontaneda began working for Defendants in 2003 and most recently had the title of Senior Accounting Manager for Customer Service. At the same managers' meeting in July 2010, when Pennisi spoke up against participating in Onionhead-related religious activities, Ontaneda said to Denali that she agreed with Pennisi and felt the same way. On or around August 23, 2010, during Denali's next monthly visit, Defendants moved Ontaneda from her shared office to a desk in the open area on the customer service floor and changed her responsibilities to include answering phones. Denali was present during the move and referred to "demons" in connection with Ontaneda's and Pennisi's resistance to Onionhead practices. The next day, Ontaneda called in sick with pregnancy-related complications and Defendants' owner called her back and fired Ontaneda through a voicemail message.

(h) Pabon began her employment with Defendants on October 6, 2010, as a Customer Care Consultant. On March 17-18, 2012, Pabon attended a spa weekend in Connecticut with Denali and about 20 other customer service representatives. Denali instructed the employees to hold hands and said that the foremost reason for the trip was spiritual enlightenment. Denali required that the employees be together all the time, hold hands, pray and chant. Pabon refused to take part in some of the group activities during that weekend and Denali refused to accept any explanations from Pabon despite her attempts to communicate them to Denali. On Monday, March 19, 2012, Denali called Pabon into her office and terminated her for "insubordination," which Pabon understood to be a clear reference to her refusal to participate in Onionhead related religious activities during the spa weekend.

(i) Other aggrieved individuals were also terminated in retaliation for opposition to Onionhead-related activities. This included, for example, not taking part in an Onionhead-related fund-raising effort outside of work time or protesting to Denali and other upper management about forced prayers in the workplace.

(j) Other aggrieved individuals faced constructive discharge based on Onionhead-related religious practices when the religiously hostile environment became intolerable. Aggrieved individuals were forced to participate in the above-described religious practices against their will and some were forced into involuntary resignation as the only way to avoid taking part in those practices.

12. The effect of the practices complained of in paragraph 11 above has been to deprive Ontaneda, Pennisi, Pabon and other aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees, because of religion.

13. The unlawful employment practices complained of in paragraph 11 above were intentional.

14. The unlawful employment practices complained of in paragraph 11 above were done with malice or with reckless indifference to the federally protected rights of Ontaneda, Pennisi, Pabon and other aggrieved individuals.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in religion-based discrimination.

B. Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for individuals regardless of their religion, and that eradicate the effects of their past and present unlawful employment practices.

C. Order Defendants to make Ontaneda, Pennisi, Pabon and other aggrieved individuals whole, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

D. Order Defendants to make Ontaneda, Pennisi, Pabon and other aggrieved individuals whole, by providing compensation for past and future pecuniary losses resulting from

the unlawful employment practices described in paragraph 11 above, including but not limited to job search expenses and medical expenses, in amounts to be determined at trial.

  E. Order Defendants to make Ontaneda, Pennisi, Pabon and other aggrieved individuals whole, by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraph 11 above, including losses such as emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

  F. Order Defendants to pay Ontaneda, Pennisi, Pabon and other aggrieved individuals punitive damages for their malicious and/or reckless conduct described in paragraph 11 above, in amounts to be determined at trial.

  G. Grant such further relief as the Court deems necessary and proper in the public interest.

  H. Award the Commission its costs of this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its complaint.


Dated: New York, New York
   June 11, 2014

          P. David Lopez
          General Counsel

          James Lee
          Deputy General Counsel

          Gwendolyn Reams
          Associate General Counsel

_____
Robert D. Rose
Regional Attorney


_____
Raechel L. Adams
Supervisory Trial Attorney

_____
Sunu P. Chandy
Senior Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3706
Sunu.Chandy@eeoc.gov