**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | x<br>:<br>: |
| **Plaintiff,** | :<br>: |
| **and** | :<br>: |
| **ELIZABETH ONTANEDA, FRANCINE PENNISI, and FAITH PABON,** | **CASE NO. 1:14-CV-03673 (KAM) (JO)**<br>:<br>: |
| **Plaintiffs-Intervenors,** | :<br>: |
| **v.** | :<br>: |
| **UNITED HEALTH PROGRAMS OF AMERICA, INC., and COST CONTAINMENT GROUP, INC.,** | :<br>:<br>:<br>: |
| **Defendants.** | x |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN EVIDENCE, OR IN THE ALTERNATIVE, MOTION IN *LIMINE*

## TABLE OF CONTENTS

**Page**

A. INTRODUCTION ...................................................................... 1

B. SUBJECTS OF MOTION TO EXCLUDE, OR ALTERNATIVELY, MOTION IN *LIMINE* ........................................................... 2

    1. Exclusion of Any Reference, Statement, or Argument Related to Stray Remarks by Non-Decision Makers Bearing No Relation to Any Alleged Adverse Employment Decision at Issue in this Case. ....... 2

    2. Exclusion of Any Reference, Statement, or Argument Attributing Actions or Policies to OH/HH and Referring to Anything That Occurred in the Workplace As Religious or a Practice, Activity, or Belief or Any Synonyms Related Thereto. ............................... 8

    3. Exclusion of Any Reference, Statement, or Argument Related to Any OH/HH Products or Concepts Not Used in Defendants' Workplace. ................................................................. 10

    4. Exclusion of Any Reference, Statement, or Argument Related to Personal Email Exchanges Between Jordan and Her Friends, Which Are Irrelevant and Prejudicial. ................................... 12

    5. Exclusion of Any Reference, Statement, or Argument Related to the EEOC's Letter of Determination, Which Is Irrelevant and Prejudicial. ............................................................... 13

    6. Exclusion of Any Reference, Statement, or Argument Related to Any E-mails Not Authored By or Sent to One of the Claimants. ......... 13

    7. Exclusion of Any Reference, Statement, or Argument Related to Ontaneda's Miscarriage. ...................................................... 15

    8. Exclusion of Any Reference, Statement, or Argument Related to Any Unauthenticated Documents. ........................................... 16

    9. Exclusion of Any Reference, Statement or Argument Related to Documents Prepared By Defendants' Attorneys During the EEOC Investigation. ............................................................... 17

    10. Exclusion of Any Reference, Statement, or Argument Related to Any Non-Relevant Documents That Will Only Lead to a Waste of Time. ............................................................... 18

## TABLE OF CONTENTS
### (continued)

<u>Page</u>

11. Exclusion of Any Reference, Statement, or Argument Related to Any Determination by an Agency Regarding the Payment of Unemployment Benefits........................................................................ 21

12. Exclusion of Any Reference, Statement, or Argument Related to Any Conciliation or Settlement Efforts. ................................................. 22

13. Exclusion of Any Reference, Statement, or Arguments Related to Plaintiffs' Job Performance. ....................................................... 22

14. Any Reference, Statement, or Argument Related to Evidence Not Previously Produced. ............................................................... 23

15. Any Reference, Statement, or Argument Related to An Undisclosed Methodology As a Measure of Damages, Including a Specific Amount Related to Compensatory or Punitive Damages. ................... 23

16. Any Reference, Statement, or Argument Related to Undisclosed Mitigation of Damages by Any Plaintiff. ...................................... 26

17. Hearsay. ........................................................................... 27

18. Any Reference, Statement, or Argument Related to Defendants' Motions to Exclude and/or Motions in *Limine*. ...................... 27

19. Bifurcation of Liability and Damages Phases of Trial........................ 28

C. CONCLUSION ..................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramowitz v. Inta-Boro Acres Inc.*,
No. 98-CV-4139 (ILG), 1999 WL 1288942 (E.D.N.Y. Nov. 16, 1999) .................. 21

*Agence France Presse v. Morel*,
293 F.R.D. 682 (S.D.N.Y. 2013) ....................................................... 23, 24

*Ali v. Police Officer William Connick*,
No. 11CV5297NGGVMS, 2016 WL 3080799 (E.D.N.Y. May 31,
2016)...................................................................................................... 3

*Allstate Finance Corp. v. Zimmerman*,
330 F.2d 740 (5th Cir. 1994) ............................................................... 26

*Amato v. City of Saratoga Springs*,
170 F.3d 311 (2d Cir. 1999)................................................................. 28

*Baker v. Baker, Dickenson & Co.*,
2013 WL 48866169 (E.D. Ky. 2013).................................................... 26

*Broadspring, Inc. v. Congoo, LLC*,
No. 13-CV-1866 JMF, 2014 WL 7392905 (S.D.N.Y. Dec. 29, 2014) .................... 14

*Buscemi v. Pepsico, Inc.*,
736 F. Supp. 1267 (S.D.N.Y. 1990) ................................................. 28, 29

*Chisholm v. Sloan-Kettering*,
No. 09 CIV. 8211 VM, 2011 WL 2015526 (S.D.N.Y. May 13, 2011) ........ 12, 21, 22

*Collier v. Boymelgreen Developers*,
No. 06CV5425(SJ), 2008 WL 835706 (E.D.N.Y. Mar. 28, 2008)........................... 21

*Getty Petroleum Corp. v. Island Transp. Corp.*,
862 F.2d 10 (2d Cir. 1988)................................................................... 27

*Greenberg v. Chrust*,
282 F. Supp. 2d 112 (S.D.N.Y. 2003) .................................................. 16

*Henry v. Wyeth Pharm., Inc.*,
616 F.3d 134 (2d Cir. 2010)............................................................... 5, 6

*Hopkins v. Nat'l R.R. Passenger Corp.*,
No. 08CV2965NGGRML, 2016 WL 1588499 (E.D.N.Y. Apr. 19,
2016).......................................................................................... 27, 28, 29

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Lewis v. City of New York,*
   689 F. Supp. 2d 417 (E.D.N.Y 2010) ..................................................... 28

*Mineo v. City of N.Y.,*
   No. 09-CV-2261 RRM MDG, 2013 WL 1334322 (E.D.N.Y. Mar. 29,
   2013).......................................................................................... 28, 29

*Mohr v. Sec. Credit Servs., LLC,*
   No. 114CV981MADCFH, 2016 WL 6638198 (N.D.N.Y. July 6, 2016) ................ 25

*Paolitto v. John Brown E. & C., Inc.,*
   151 F.3d 60 (2d Cir. 1998) ............................................................ 13, 17

*Quinones v. Atl. Hyundai,*
   No. 06-CV-1626 (TLM), 2010 WL 1705761 (E.D.N.Y. Apr. 28, 2010) ................ 14

*Spotnana, Inc. v. Am. Talent Agency, Inc.,*
   No. 09 Civ 3698(LAP), 2010 WL 3341837 (S.D.N.Y. Aug. 17, 2010)................... 25

**Rules**

Fed. R. Civ. P. 26(a) ....................................................................... 26

Fed. R. Civ. P. 26(a)(1)(A)(iii) ........................................................... 23

Fed. R. Civ. P. 37(c)(1) ............................................................... 23, 26

Fed. R. Evid. 26 .................................................................. 22, 23, 24

Fed. R. Evid. 37 ........................................................................... 22

Fed. R. Evid. 401........................................................................*passim*

Fed. R. Evid. 402 ...................................................................... 3, 13

Fed. R. Evid. 403........................................................................*passim*

Fed. R. Evid. 407 .......................................................................... 15

Fed. R. Evid. 408 .......................................................................... 21

Fed. R. Evid. 602 ................................................................. 8, 14, 22

Fed. R. Evid. 701 .......................................................................... 14

Fed. R. Evid. 802 ................................................................. 14, 16, 22

# TABLE OF AUTHORITIES
## (continued)

**Page**

Fed. R. Evid. 901.................................................................................. 15

Fed. R. Evid. 1002............................................................................... 17

Defendants United Health Programs of America, Inc. and Cost Containment Group, Inc. ("CCG") (collectively, "Defendants") file this Motion to Exclude, or in the Alternative, Motion in *Limine*, and in support thereof state:

## A.   <u>INTRODUCTION</u>

As the instant matter currently is postured for trial, Plaintiff the U.S. Equal Employment Opportunity Commission ("EEOC"), on behalf of seven claimants, and Plaintiffs-Intervenors Elizabeth Ontaneda ("Ontaneda"), Francine Pennisi ("Pennisi"), and Faith Pabon ("Pabon") ("Intervenors" and together with the EEOC and claimants "Plaintiffs), allege that Defendants created a hostile work environment and discriminated against Ontaneda, Pennisi, Pabon and the claimants because they refused to conform to Onionhead/Harnessing Happiness ("OH/HH"). Although this Court found at summary judgment that "OH/HH is a religion for the purpose of Title VII," (Dkt. Entry No. 88 at 31-43), it appears from the exhibits and testimony Plaintiffs seek to introduce at trial that they, *inter alia*, wish to re-litigate this issue, thereby introducing to the jury matters that are irrelevant, otherwise inadmissible, or unnecessary for any reason other than to lengthen the trial, and inflame, confuse, or mislead the jury. Given the unfair prejudice that would result from introduction of such testimony and exhibits (as well as the other information discussed herein), Defendants respectfully request that the Court order Plaintiffs, their counsel, and, through their counsel, their witnesses, to refrain from discussing certain matters in the presence of the jury.

## B.      SUBJECTS OF MOTION TO EXCLUDE,
## OR ALTERNATIVELY, MOTION IN *LIMINE*

Defendants respectfully request that Plaintiffs, their witnesses, and their attorneys be instructed to refrain from discussing or alluding in any way, directly or indirectly, orally, or demonstrating, before the jury panel or the jury, either in *voir dire* examination or upon presentation of their case, anything concerning the following matters, or alternatively, mandate that Plaintiffs call these matters to the attention of the Court out of the presence and hearing of the jury and that a ruling be made by the Court as to the competency of each matter prior to any discussion in front of the jury. Defendants further ask this Court to instruct counsel for Plaintiffs to apprise each of Plaintiffs' witnesses to the content of this motion and the Court's Order so that the matters set forth in this motion and the Court's Order will not be inadvertently violated by a witness. Permitting interrogation of witnesses, comments to jurors or prospective jurors, or offers of evidence concerning these matters would inflame, confuse, or mislead the jury, and would result in unfair prejudice to Defendants. Fed. R. Evid. 403. Sustaining objections to such questions, statements, or evidence introduced by counsel or the witnesses will not prevent prejudice, but will reinforce the impact of such prejudicial matters.

1.      **Exclusion of Any Reference, Statement, or Argument Related to Stray Remarks by Non-Decision Makers Bearing No Relation to Any Alleged Adverse Employment Decision at Issue in this Case.**

Defendants anticipate that Plaintiffs will attempt to introduce either written documents or alleged statements made by Linda "Denali" Jordan ("Jordan"), who was not a decision maker, and which statements have nothing whatsoever to do

with Plaintiffs' claims. Specifically, Defendants anticipate Plaintiffs will introduce statements made by Jordan regarding demons, God, love, what they contend are references to spirituality, and what are arguably new age-y concepts. Any such reference, question, statement, allusion to, or testimony by Plaintiffs their attorneys, or their witnesses regarding OH/HH these statements or documents should be excluded as the only reason for presenting them would be to mislead and prejudice the jury against Defendants. This request also includes but is not limited to Plaintiffs' Exhibit numbers: 21-22, 25-26, 36, 39, 42-44, 50-51, 53, 58, 63, 66, 68, 72, 74-76, 104.[1]

Importantly, these documents and statements should be excluded because they are not relevant to any issue in this case, and should be excluded pursuant to FRE 402. "Federal Rule of Evidence 401 provides that [e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Ali v. Police Officer William Connick*, No. 11CV5297NGGVMS, 2016 WL 3080799, at \*1 (E.D.N.Y. May 31, 2016) (internal citations omitted). Plaintiffs' claims related to OH/HH are based on allegations that Defendants forced them to practice a religion and/or terminated those who refused to participate. The religion alleged to have been forced upon them is OH/HH. OH/HH are conflict resolution tools developed by Jordan for both children and adults. (*See* Dkt. Entry No. 86-2 ¶¶ 9-14, 20, 21, 26-28.) Jordan has testified to all documents that were created in relation to OH/HH.

---

[1] All contested Plaintiffs' exhibits are attached hereto in numerical order for the Court's reference and pursuant to the Court's Pre-Trial Order dated November 3, 2016 (Dkt. Entry No. 97)).

(*Id.* at ¶¶ 22, 23, 29.) Although Defendants disagree on Plaintiffs' characterization of these tools as a religion, this Court determined that OH/HH is a religion for Title VII purposes based, in part, on its review of certain OH/HH documents specified by Jordan. Plaintiffs should not now get to declare extraneous documents or statements as part of OH/HH.

Jordan's comments or e-mails unconnected to the implementation of OH/HH at Defendants' workplace have no bearing on these claims. The statements and documents that Plaintiffs wish to admit may relate to Jordan's personal beliefs, but there is absolutely no evidence that Jordan shared her beliefs with Plaintiffs in connection with implementing the OH/HH program in the workplace, and her personal beliefs are not related in any way to implementation of OH/HH at Defendants' workplace, nor do those statements and documents have any relevance as to any alleged adverse actions taken against employees. Thus, they are irrelevant. Likewise, Plaintiffs' Exhibits 45-48 should be excluded as they are irrelevant to OH/HH – there is absolutely no tie between these seemingly randomly grouped media and the OH/HH tools.

Even if the Court were to find the above-referenced statements, documents, and media relevant to any disputed issue in this case, the "marginal probative value of this evidence is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time." Fed. R. Evid. 403. The Second Circuit's test for determining whether remarks are more probative than prejudicial depends upon four factors: (1) who made the remark (i.e., a

decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process). *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). Each of these factors compels exclusion of Jordan's remarks in this case. Although Plaintiffs allege two of these remarks were related to an adverse employment decision, as explained below, Jordan was not a decision-maker in those decisions, there is no evidence that either remark was made in connection with any alleged adverse action, the statements do not show discriminatory animus, and there is no evidence of a connection between the alleged remarks and the OH/HH religion Plaintiffs contend they were forced to participate in.  Thus, they too should be excluded.

In their deposition testimony, Ontaneda and Pennisi claim that Jordan made a passing reference to "demons" on the day that their work stations were moved, a day before their terminations. (Dep. N at 123; Dep. Q at 101.) Assuming, for the sake of argument, that Jordan did make the reference to "demons" while Pennisi and Ontaneda were moving, which Defendants specifically deny, the remarks should still be excluded because: (1) Jordan was not the decision maker as to Pennisi's and Ontaneda's terminations or with respect to any other alleged adverse action, and (2) there is no evidence that these statements evidenced discriminatory animus toward Pennisi, Ontaneda, or any other employee. Both Pennisi and

Ontaneda admit that Rob Hodes ("Hodes") terminated them via telephone after they both refused to show up for work the day after their desks were moved. (Dep. N at 117; Dep. Q at 108.)   The alleged remarks were not made in the context of the decision making process, but as stated by Ontaneda and Pennisi, in connection with an office move. Moreover, the alleged comment, "the demons are going to be so angry," could not be viewed by a reasonable juror to be discriminatory, either against Catholicism (in the case of Pennisi) or as a comment in furtherance of the OH/HH "religion". Indeed, there has been no testimony that purports to link OH/HH with demons, and but for the self-serving testimony of Ontaneda that alleges Jordan looked at her at one point while mentioning "demons," there is no evidence that these comments were directed to either Ontaneda or Pennisi or that the comments concerned any decision with respect to them. (Dep. N at 123.) This is particularly true since there were at least 11 other employees moved that same day. (Dep. G at 154-55, 181; Dep. I at 192-93; Dep N at 127-128; Dep Q at 100.) Jordan's alleged remarks about demons on the day that Pennisi and Ontaneda were moved should therefore be excluded. *Henry*, 616 F.3d 134 (in race discrimination action, remark attributed to supervisor two levels above plaintiff, who was allegedly involved in at least one discriminatory action against plaintiff, was properly excluded because it was not related to decision making process, and although the remark may have been offensive, it did not evidence discriminatory animus.)

The only other applicable exhibit/statement that is alleged to have any reference to an adverse employment action is Plaintiffs' Exhibit 104, an email by

Jordan that Honohan claims was a "pre-cursor" to her termination. (Dep. H at 188.) When asked to explain why she believed that this e-mail had anything to do with her termination, Honohan replied only that she "just had a feeling." (*Id.*) Honohan later admitted that she did not know for a fact that Jordan's email had anything to do with her termination. (*Id.* at 189.) Honohan admits she was terminated by Tracy Bourandas ("Bourandas"), not Jordan. (*Id.* at 116.) Although Jordan's remark was relatively close in time to Honohan's termination, it was not made in connection with the decision making process, and a reasonable juror could not find an inference of discrimination in this e-mail. The email references the alignment of planets and the historical significance thereof – it does not discuss, relate to, or even mention OH/HH, nor does it mention Honohan, anyone at the workplace, or the workplace generally. There is no reasonable inference that this e-mail was a comment to (or about) Honohan and her participation in OH/HH in the workplace.

The remainder of the alleged "demon" references and the referenced exhibits should also be excluded. "[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination. . . ." *Id.* at 149. The remaining allegations related to "demons" and the referenced exhibits are not alleged to have any relation to any adverse employment action either in time or in context. Therefore, a reasonable juror could not find that any of these alleged "demon" comments (or any other non-OH/HH statements by Jordan, such as anything allegedly spiritual in nature or new age-y,

God, love, etc.) were in any way connected with any adverse decision alleged by Plaintiffs here.

**2.      Exclusion of Any Reference, Statement, or Argument Attributing Actions or Policies to OH/HH and Referring to Anything That Occurred in the Workplace As Religious or a Practice, Activity, or Belief or Any Synonyms Related Thereto.**

Defendants anticipate that Plaintiffs will use such verbiage of employees engaging in "practices", "activities", and "beliefs", whether religious or not to insinuate that these actions are specifically related to OH/HH, even when there has been no proof of any such linkage. Defendants further anticipate Plaintiffs' plan to argue, notwithstanding their complaint, that all things Jordan equal OH/HH. There has been no proof of that. Any reference, question, statement, allusion to, or testimony by Plaintiffs, their attorneys, or their witnesses attributing any action to OH/HH, which has not specifically been identified by Jordan as an OH/HH product in her declaration (Dkt. Entry No. 86-2 ¶¶ 22, 23, 29), should be excluded. Any such attribution would be mere speculation as to what constitutes OH/HH and highly prejudicial to Defendants. FRE 602 and FRE 403. Jordan was the founder of OH/HH, but not every action she took or statement she made should automatically be attributed to OH/HH. She is not a one dimensional person whereby everything she does must relate to OH/HH. In fact, this can be demonstrated by the fact that she supports several non-profit organizations, is Jewish, and acts as a consultant. These are all distinct pieces of Jordan's identity. They cannot be muddied together with the assumption that everything she touches is OH/HH. This motion includes, but is not limited to, Plaintiffs' allegations related to: lit candles, prayer, holding

8

hands in a prayer circle, reading spiritual texts, thanking God, saying "I love you" to coworkers, sharing about their personal lives, moving desks or work spaces of employees, playing soft music, using dim lights, redecorating, providing the quiet room, burning incense, and having miniature water fountains.

Likewise, any reference, question, statement, allusion to or testimony by Plaintiffs, their attorneys, or their witnesses referring to anything that occurred in the workplace as having been "religious" or having been a "practice," "activity," or "belief" (or any synonyms for these three words) would be misleading to the jury and highly prejudicial to Defendants. FRE 403. As discussed above, OH/HH is a conflict resolution tool created by Jordan. Although the Court has found that OH/HH is a religion, there has not been a finding that OH/HH has any associated practices, activities, or beliefs, and Plaintiffs should be precluded from referring to anything and everything that happened in the office (e.g., burning candles, moving desks/workspaces) as having been religious.

Furthermore, Plaintiffs should be precluded from referring to anything that occurred in Defendants' office as a "practice," an "activity," or a "belief." Such wording would mislead the jury into believing that such things occurring in the office were all part of an overarching "practice" – and more specifically, to the alleged religion of OH/HH – and would be highly prejudicial to Defendants. FRE 403. This includes, but is not limited to allegations that employees lit candles in the office, practiced prayer, held hands in a prayer circle, read spiritual texts, thanked God, said "I love you" to coworkers, shared about their personal lives, moved desks

or work spaces, played soft music, used dim lights, redecorated the office, used the quiet room, burned incense, and had miniature water fountains. Indeed, there has been no evidence whatsoever that these alleged occurrences were in any way related to OH/HH, and Plaintiffs should not be given free rein to include under the OH/HH umbrella anything they observed in the workplace that fits their theory of the case without first providing evidence that tie these actions to OH/HH as implemented in the workplace.

**3.      Exclusion of Any Reference, Statement, or Argument Related to Any OH/HH Products or Concepts Not Used in Defendants' Workplace.**

Defendants anticipate based on Plaintiffs' exhibit list that Plaintiffs plan to use OH/HH products or concepts that indisputably were not used in Defendants' workplace. While OH/HH has been deemed a religion, the only products or concepts relevant to Plaintiffs' claims are those that were actually used in Defendants' workplace. The remaining products and concepts are not at issue here, and yet, in what can only be seen as an effort to mislead the jury and capitalize on the ruling that OH/HH is a religion for Title VII purposes, Plaintiffs cherry pick those OH/HH products they find most religious or unconventional. Allowing such irrelevant documents to be presented to the jury would be improper and highly prejudicial to Defendants.

While these documents were properly utilized by the Court in determining whether OH/HH is a religion, there is no evidence that these products or concepts were in the workplace and to permit them to be presented to the jury, would only serve to greatly confuse and prejudice the jury against Defendants. As such, any

reference, question, statement, allusion to, or testimony by Plaintiffs, their attorneys, or their witnesses regarding OH/HH products that were never used in the workplace (including, but not limited to, Plaintiffs' Exhibit Numbers 8, 26, 27, 34, 55, 59) should be excluded as not relevant, because they could not possibly have been used to coerce Plaintiffs into participating in OH/HH as alleged by the claims here.

There is no evidence that any of the aforementioned documents were used in the workplace, and in fact, there is evidence to the contrary. Bourandas testified that she facilitated OH/HH workshops in the workplace and used OH cards and the Adult Dictionary of 150 Emotions in those workshops. (Dep. C at 78-93.) Defendants consent to the admission of these exhibits. To the contrary, there is no testimony that any of the materials subject to this motion were used in these workshops.

Furthermore, Bourandas testified that she did not recognize either Plaintiffs' Exhibit 34 or 27 and that she did not even discuss these products in her general orientation of what OH/HH is. (Bourandas Dep. at 66-70). There is no evidence that any of these products were used in the workplace.

The irrelevancy of these documents is even clearer since the Court has already ruled OH/HH constitutes a religion. There is no compelling reason to look outside the documents used within the workplace – indeed, it does not matter which products existed in OH/HH if they were not used in the workplace. Even if they were relevant, to consider these documents, or any references thereto, would be prejudicial to Defendants because it would be confusing and misleading to the jury,

who should only be focused on documents used in the workplace. Fed. R. Evid. 403. Furthermore, showing these documents to a jury would be a waste of time.

### 4.  Exclusion of Any Reference, Statement, or Argument Related to Personal Email Exchanges Between Jordan and Her Friends, Which Are Irrelevant and Prejudicial.

Having nothing whatsoever to do with the workplace or the decisions related to adverse employment actions, the attempt by the EEOC and Plaintiffs to paint Jordan in a certain light by parading every email she sent to her personal friends would serve only to confuse and mislead the jury and grossly prejudice the Defendants. Jordan did not use OH/HH in the workplace (Dep. I at 233-236); she did not conduct any OH/HH workshops (*Id.* at 202-203, 209), and yet, Plaintiffs attempt to assign every action, thought, or statement by Jordan to OH/HH. Any reference, question, statement, allusion to, or testimony by Plaintiffs, their attorneys, or their witnesses regarding Jordan's personal emails to her friends, including, for example, Exhibit 35, should be excluded.

For example, Plaintiffs' Exhibit 35 is an e-mail from Jordan's OH e-mail account, not her CCG account, and is addressed to several people outside of Defendants' employ, who were friends. Pegullo, the only plaintiff copied on the e-mail, testified that she had a personal friendship with Jordan outside the workplace. (Dep. P at 127.)  Even if relevant, this exhibit would only serve to confuse and mislead the jury, ultimately resulting in a waste of time. Fed. R. Evid. 403. Any probative value would be outweighed by the prejudice to Defendants. Fed. R. Evid. 403.

5.   **Exclusion of Any Reference, Statement, or Argument Related to the EEOC's Letter of Determination, Which Is Irrelevant and Prejudicial.**

Sharing a document with the jury that states that the EEOC found probable cause to believe that Defendants had discriminated against Plaintiffs, where that jury may not understand the ramifications or thresholds of such a finding, would likely confuse the jury, and only serve to prejudice Defendants. As such, Exhibit 4, s the EEOC's Letter of Determination should be excluded. There is no real probative value here to outweigh the prejudice Defendants would suffer. This is particularly the case whereas, here, the letter states that the charging parties definitively "suffered a hostile work environment based on religion." (Pl. Ex. 4, 003.) *See Chisholm v. Sloan-Kettering*, No. 09 CIV. 8211 VM, 2011 WL 2015526, at *2 (S.D.N.Y. May 13, 2011) ("the Determination has low probative value because it is sparse and conclusory and . . . Defendants will have the opportunity to present to the jury all of the evidence that they submitted to the EEOC.")  Given that a trial of alleged discrimination is conducted *de novo*, a Plaintiff's "conclusions" are not relevant, and create nothing but confusion and undue prejudice. *See Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 65 (2d Cir. 1998).

6.   **Exclusion of Any Reference, Statement, or Argument Related to Any E-mails Not Authored By or Sent to One of the Claimants.**

Plaintiffs inexplicably attempt to introduce several e-mails as exhibits that are not written to them – the e-mails are simply irrelevant. Fed. R. Evid. 402. Any reference, question, statement, allusion to, or testimony by Plaintiffs, their attorneys, or their witnesses regarding Plaintiff's Exhibits 15-20, 27, 56, 64, 67, 78 should be excluded.

13

Specifically, Plaintiffs' Exhibits 15-20, 27, 64, and 67 are e-mails by and among employees of OH, which relate to the strategy, growth, sales, and every day concerns of the non-profit organization. These e-mails do not mention OH in Defendants' workplace, requiring Defendants' employees to participate in OH, and in no way affect Plaintiffs. Similarly, Plaintiffs' Exhibit 56 is an e-mail regarding the performance of a current employee of Defendants (Rich D'Andrea), and has nothing to do with OH/HH, or any of the Claimants. Permitting these e-mails would be confusing and misleading to the jury and would likely have a prejudicial effect for Defendants, and in either case would be a waste of time. Fed. R. Evid. 403.

Lastly, Exhibit 78, which in addition to being addressed to none of the Plaintiffs, is dated March 26, 2013 - long after any of the plaintiffs worked for Defendants. Any alleged policy or practice put into place after plaintiffs' employment with Defendants ended is simply irrelevant. *Quinones v. Atl. Hyundai*, No. 06-CV-1626 (TLM), 2010 WL 1705761, at *1 (E.D.N.Y. Apr. 28, 2010) (testimony based on statements being made after termination not relevant to discrimination claim). To permit Plaintiffs to argue to the jury otherwise would be prejudicial to Defendants, mislead the jury, and a waste of time. Fed. R. Evid. 403.

Even if the foregoing exhibits were relevant and not prejudicial, they all contain inadmissible hearsay to which no exception applies, and should be excluded on those grounds. Fed. R. Evid. 802; *see also Broadspring, Inc. v. Congoo, LLC*, No. 13-CV-1866 JMF, 2014 WL 7392905, at *3 (S.D.N.Y. Dec. 29, 2014) ("to the extent they are offered for the truth, the e-mails are plainly hearsay.").

14

**7.    Exclusion of Any Reference, Statement, or Argument Related to Ontaneda's Miscarriage.**

Any reference, question, statement, allusion to, or testimony by Plaintiffs, their attorneys, or their witnesses regarding Ontaneda's miscarriage, including Plaintiffs' Exhibit 125, which is documentation related to her miscarriage, should be excluded because they would confuse or mislead the jury and greatly prejudice Defendants, which would, result in a waste of time. Fed. R. Evid. 403. There has been no expert evidence causally linking Ontaneda's miscarriage with her termination or the alleged stress she suffered as a result. Any testimony from Ontaneda attempting to link her termination and the miscarriage would be improper. Ontaneda has no training to permit her to provide expert testimony in this area and thus it is impermissible opinion testimony by a lay witness and/or pure speculation. Fed. R. Evid. 701 and 602. In fact, during her deposition, Ontaneda testified that the hospital staff did not give her any reason for her miscarriage. (Dep. N at 231.) Furthermore, on July 6, 2015, Defendants served their expert disclosures in this matter upon Plaintiffs, which disputed any link between Ontaneda's miscarriage and any alleged stress in her life. (Traub Dec. ¶ 2, Ex. A.) Defendants did not list an expert witness for trial based on representations from Ontaneda's counsel, Anthony Mango, Esq., that he would not pursue the issue further. (*Id.* at ¶ 3.) The prejudice to Defendants in permitting these documents or any reference to Ontaneda's miscarriage would greatly outweigh the probative value, if any.

15

8.     **Exclusion of Any Reference, Statement, or Argument Related to Any Unauthenticated Documents.**

Any reference, question, statement, allusion to, or testimony by Plaintiffs, their attorneys, or their witnesses regarding Plaintiffs' Exhibits 37, 73, and 98 would be improper because Plaintiffs have failed to authenticate any of these documents, and therefore, they should be excluded. Fed. R. Evid. 901.

Plaintiffs' Exhibit 37 is a picture of the outside of CCG. There has been no evidence as to when or who took this photo, nor has there been any representation that such information can be given. Furthermore, to the extent that this photo will be used for the purpose of showing that the OH sign was eventually taken down and Plaintiffs attempt to argue or insinuate its removal was related to the claims brought by Plaintiffs, they should be precluded from doing so. Such use would be in violation of Federal Rule of Evidence 407, which prohibits a party from showing evidence of [alleged] subsequent remedial measures to prove culpable conduct.

Plaintiffs' Exhibit 73 is purportedly a CCG organization chart, but is wholly unauthenticated. There is no evidence as to who drafted the organization chart, nor is there any evidence that it is accurate. In fact, evidence supports the contrary. Hodes, the Chief Executive Officer of CCG during the time all Plaintiffs were employed, testified during his deposition that there were individuals who held leadership roles that were not listed on the chart and that the position listing Jordan never existed. (Dep. G at 59-61.)  Hodes further testified that he does not recall ever seeing the second page of the chart. (*Id.* at 63.)  Furthermore, to permit this unauthenticated and inaccurate organization chart to be presented to the jury

would prejudice Defendants and cause confusion to the jury, and ultimately, result in a waste of time. Fed. R. Evid. 403.

Plaintiffs' Exhibit 98 purports to be a transcript of a telephone call between Hodes and first Pennisi's sister and then Pennisi. This exhibit cannot be authenticated. There is no way to demonstrate that it reflects an accurate transcription of the telephone conversation. In fact, it is almost certainly not an accurate transcription. Even if Pennisi used her best recollection and had no ill intentions, she testified that she did not record the telephone conversation, did not take notes of the conversation, and did not prepare this document until she spoke with her attorney, about a year after the conversation took place. (Dep. Q at 110-112.) Pennisi further admitted that she was not sure that the notes were "exact." (*Id.* at 112.) In addition, the document is hearsay (and contains hearsay within hearsay) and must be excluded. Fed. R. Evid. 802; *see also Greenberg v. Chrust*, 282 F. Supp. 2d 112, 117 (S.D.N.Y. 2003). Admission of Plaintiffs' Exhibit 98 would prejudice Defendants and mislead the jury. Fed. R. Evid. 403.

## 9. Exclusion of Any Reference, Statement or Argument Related to Documents Prepared By Defendants' Attorneys During the EEOC Investigation.

Any reference, question, statement, allusion to or testimony by Plaintiffs, their attorneys or their witnesses regarding Plaintiffs' Exhibits 89 and 90, both of which were prepared by Defendants' previous counsel in response to information requests from the EEOC during its investigation should be excluded because they are not best evidence. Fed. R. Evid. 1002. A Title VII case is tried *de novo*, (*see generally, Paolitto,* 151 F.3d at 65) thus, any information or conclusions from the

EEOC investigation is not best evidence. Furthermore, Plaintiffs can submit the information from these documents through live testimony.

**10.    Exclusion of Any Reference, Statement, or Argument Related to Any Non-Relevant Documents That Will Only Lead to a Waste of Time.**

Without detracting from the previous arguments made regarding non-relevant documents, this request relates to all non-relevant documents, including, but not limited to, Plaintiffs' Exhibits 60, 86 (DEF 65-70, 101-106, 111-120 only), 91 (EEOC 111-16 and 122-25 only), 99-101, 106, 108, 111 (DEF 1140-41 only) and 115. Non-relevant documents should be excluded from presentation at trial and a ruling to the contrary may mislead or confuse the jury and be a waste of time, resulting in prejudice to Defendants. Fed. R. Evid. 401 and 403.

For example, Exhibit 60 is irrelevant to the claims at issue here and would result in prejudice to Defendants because it would mislead the jury and be a waste of time. Fed. R. Evid. 401 and 403. This document is a picture of the OH Tradeshow Booth. This document is not relevant to the claims at issue here. These photographs were taken apart from the e-mail that attaches them wherein it is explained that the booth is set up at a teacher's show – outside of Defendants' offices. The pictures are forwarded to CCG employees to just show "how the Onionhead booth looks all set up." (DEF 1183.) This exhibit also leaves out a response from one of the plaintiffs, Pegullo, who thanks Bourandas for sending the photos and wishes everyone "Blessing and Abundance."  (DEF 1183.)  Moreover, these documents do not relate to requiring employees to participate in OH/HH at work; rather, these photos just demonstrate the success of OH, one of the non-profits that CCG

supported, outside of the office. None of the plaintiffs have alleged they were required to work at this teacher show, or that work related to any other show was an unwelcomed, required piece of their employment. In fact, Caitlin Shillitto, an OH employee, testified that the person shown in the photo was either her or Bourandas, and (in case Plaintiffs attempt to make the argument that it demonstrates someone praying or worshipping) that they were kneeling in the photo in order to enter information into their computer because bending over hurt their backs. (Dep. T at 160.) To show these documents to the jury would confuse or mislead the jury, be prejudicial to Defendants, and a waste of time. Fed. R. Evid. 403.

Exhibits 86 (DEF 65-70, 101-106, 111-120 only), 91 (EEOC 111-16 and 122-25 only), and 111 (DEF 1140-41 only) are performance evaluations from Ontaneda, Pennisi, and Pegullo. First, Ontaneda's, Pennisi's, nor Pegullo's job performance are in question. Instead, the testimony reflects that Ontaneda and Pennisi were terminated for job abandonment (Dep. G at 143-144, 154, 192.) and that Pegullo was terminated for sharing a private e-mail with the staff, a fact that she herself admitted during her deposition. (Dep. P at 273-75.) So there is no probative value to the documents. Fed. R. Evid. 401. Second, the evaluations Defendants wish to exclude are not relevant due to the time frame in which they were executed. Defendants seek to exclude Ontaneda's evaluations from the years 1994-96 and 1998-99. Defendants have consented to a review from 2010 (DEF 107-110) (during the relevant time period) and one from 1996 (DEF 63-64) (for comparison purposes). Defendants seek to exclude Pegullo's 2005 evaluation. Defendants consented to a

review from 2007 (DEF 1150-1153) (during the relevant time period) and 2006 (DEF 1146-1149) (for comparison purposes). Any other evaluations would be irrelevant and prejudicial to Defendants since presenting documents stating how well an employee performed when performance is not at issue would mislead the jury and be a waste of time. Fed. R. Evid. 401 and 403.

Defendants wish to exclude the Pennisi's employment evaluations (EEOC 111-16 and 122-25) because they are exact copies of DEF 292-297 and 303-306, to which Defendants consented. Presenting both copies to the jury would be cumulative, confusing, and a complete waste of time. Fed. R. Evid. 403.

Exhibit 106 is an employee of the month award for Pegullo. Exhibit 115 is an unsigned letter of recommendation for Pegullo. These documents are irrelevant for the same reasons the employee evaluations are irrelevant.

Exhibits 99-101 relate to Regina Maldari's ("Maldari's") work performance. First, like Ontaneda, Pennisi, and Pegullo, Maldari's job performance is not in question in this lawsuit. Maldari admits that she was terminated as a result of her job being eliminated. (Dep. M at 45.) The documents are therefore irrelevant. Fed. R. Evid. 401. Second, these documents are even more irrelevant because they were produced by third parties who have no insight into Defendants' requirements or standards for judging employment performance. To present these documents to the jury would be confusing, misleading and a waste of time. Fed. R. Evid. 403. As a result, these documents would prejudice Defendants. Fed. R. Evid. 403.

Exhibit 108 is an e-mail conversation between Jordan and Sandra Benedict ("Benedict") discussing the fact that Jordan and Hodes would like to see Benedict and her children. This conversation is after Benedict's employment with Defendants ended and does not relate to her departure from Defendants, nor does it relate to or mention OH/HH. This e-mail would not tend to prove or disprove that Benedict was required to participate in OH/HH or that she suffered an adverse employment action as a result of her refusal to participate. Fed. R. Evid. 401. To present these documents to the jury would be confusing and misleading and a waste of time. Fed. R. Evid. 403. As a result, these documents would prejudice Defendants. Fed. R. Evid. 403.

**11.  Exclusion of Any Reference, Statement, or Argument Related to Any Determination by an Agency Regarding the Payment of Unemployment Benefits**

Any reference, question, statement, allusion to, or testimony by Plaintiffs, their attorneys, or their witnesses regarding but not limited to, Plaintiffs' Exhibits 87 and 88 should be excluded because any determination of payments of unemployment benefits is not relevant to the claims at issue here. Fed. R. Evid. 401. The standards for determining unemployment insurance benefits versus liability related to discrimination claims are vastly different and any evidence related to the agency's determination may confuse the jury, which would lead to prejudicing Defendants. Fed. R. Evid. 403; *see also Chisholm v. Sloan-Kettering*, No. 09 CIV. 8211 VM, 2011 WL 2015526, at *8; *Abramowitz v. Inta-Boro Acres Inc.*, No. 98-CV-4139 (ILG), 1999 WL 1288942, at *6-9 (E.D.N.Y. Nov. 16, 1999).

**12.    Exclusion of Any Reference, Statement, or Argument Related to Any Conciliation or Settlement Efforts.**

Any reference, question, statement, allusion to, or testimony by Plaintiffs, their attorneys, or their witnesses regarding the fact that Defendants have not made, considered, or promised to accept, or will make, consider, or accept any offer to compromise or settle the claims involved in this action; or any reference to the fact that settlement discussions have or have not taken place; or the statements or conduct of any party in connection with such settlement discussions, including, but not limited to Plaintiffs' Exhibit 5, which is the Letter of Conciliation stating that conciliation efforts between the parties failed should be excluded. Fed. R. Evid. 408; *Collier v. Boymelgreen Developers*, No. 06CV5425(SJ), 2008 WL 835706, at *10 (E.D.N.Y. Mar. 28, 2008) (striking from complaint mentions of conciliation efforts during EEOC administration proceedings – although not intended to show fault, the statements would be prejudicial and inadmissible at trial and thus striking was appropriate.)

**13.    Exclusion of Any Reference, Statement, or Arguments Related to Plaintiffs' Job Performance.**

Any reference, question, statement, allusion to, or testimony by Plaintiffs, their attorneys, or their witnesses regarding any plaintiffs' alleged job performance from any witnesses (including any plaintiff) who were not that individual's supervisor or employed by Defendants during the relevant time period should be excluded as they are not only irrelevant insofar as these witnesses have no personal knowledge of the requirements of the plaintiffs' position with Defendants (*i.e.* any such testimony would be based on hearsay or speculation), but they would also

serve only to confuse and mislead the jury, which would substantially prejudice Defendants. Fed. R. Evid. 401, 403, 802; *Chisolm*, 2011 WL 2015526 at 6 ("any coworker testimony about job performance would not be based on personal knowledge and is inadmissible"); Fed. R. Evid. 602.

**14.   Any Reference, Statement, or Argument Related to Evidence Not Previously Produced.**

Any reference, question, statement, allusion to, or testimony by Plaintiffs, their attorneys, or their witnesses regarding any documents, summaries of writings, recordings, or photographs that previously have not been made available for examination or copying to Defendants' attorneys in this case prior to trial should be excluded. Fed. R. Evid. 26 and 37.

**15.   Any Reference, Statement, or Argument Related to An Undisclosed Methodology As a Measure of Damages, Including a Specific Amount Related to Compensatory or Punitive Damages.**

Any reference, question, statement, allusion to, or testimony by Plaintiffs, their attorneys, or their witnesses regarding any undisclosed methodologies or calculations of damages or suggestion of a specific dollar amount for compensatory and punitive damages should be excluded.

Plaintiffs have disclosed their methodology of calculating damages and have amended those methodologies throughout this litigation. In fact, the EEOC has amended their damages calculation 13 times throughout this lawsuit, the last of which was in August of 2015. The EEOC's calculations of damages were very specific, spelling out the exact amount of back pay sought for each claimant, the basis therefor, including the time period of back pay, and whether or not any

alleged lost benefits were sought. Plaintiffs-Intervenors, after having the benefit of viewing EEOC's calculations, provided their calculation of damages in May of 2015. None of the plaintiff-intervenors list lost benefits as being sought.

A plaintiff is prohibited from introducing at trial any new methodologies for calculating its alleged damages that have not yet been timely disclosed to the defendant. Fed. R. Civ. P. 26(a)(1)(A)(iii); Fed. R. Civ. P. 37(c)(1). "Even a party's own production of documents supporting its theory of damages cannot excuse that party from its separate obligation to disclose a damages computation." *Agence France Presse v. Morel*, 293 F.R.D. 682, 685 (S.D.N.Y. 2013) (refusing to permit a new calculation of damages and holding "damages computations and the documents supporting those computations are two different things, and Rule 26 obliges parties to disclose and update the former as well as the latter"). This shall include but not be limited to any argument or exhibits presented by Plaintiffs related to any claimant being entitled to health (or any other) benefits whose discovery responses did not previously claim such damages, or any argument related to back pay not previously claimed in their discovery responses.

When a party has not properly disclosed or updated its disclosure, a district court has discretion to preclude that information from being presented at trial. *Id.* In considering when to preclude, courts examine these factors: "(1) the party's explanation for its failure to disclose, (2) the importance of the evidence, (3) the prejudice suffered by the opposing party, and (4) the possibility of a continuance."

*Id.* at 685. Plaintiffs bear the burden of showing that their violation was either justified or harmless. *Id.*

Here, Plaintiffs have offered no explanation as to why any claim for back pay or benefits was not made over the last two plus years during their 13 amendments to their answers to interrogatories requesting specific damages calculations. Defendants would be greatly prejudiced if now, only months from trial, and after basing their strategy and discovery sought on the damages calculations provided to them over a year and a half ago, Plaintiffs were permitted to amend their damages calculations. *Id.* at 686 ("Never having been put on notice of these possibilities until now, Defendants had no reason to conduct discovery related to them."). Defendants have requested damages calculation information from Plaintiffs on numerous occasions (Traub Dec. ¶¶ 5-8, Exs. C-F), which only renders Plaintiffs' tardy revisions all the more prejudicial. *Id.* at 688 ("Plaintiff's failure to disclose his new theory until soon before trial is particularly problematic in light of Defendants' repeated discovery requests for information regarding his computation.") Furthermore, there is no likelihood of a continuance since discovery has been completed for over a year and a trial is scheduled in four months.

These factors all weigh in favor of preclusion regardless of the importance of any modified damages calculation and any exhibits supporting thereof. *Spotnana, Inc. v. Am. Talent Agency, Inc.,* No. 09 Civ 3698(LAP), 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010) (finding prejudice "particularly great" because discovery closed over four months prior, would have to be reopened for defendants to properly

respond to plaintiff's damages calculations, that "closure of discovery four months ago weighed strongly against the possibility of a continuance", and that "these three factors outweigh the importance of [Plaintiff's] damages evidence, even though [Plaintiff] may be denied any recovery as a result, because [Plaintiff] has disregarded its discovery obligations without any explanation at all."). Accordingly, Plaintiffs should be prohibited from claiming any damages not already disclosed as part of their methodology.

Additionally, Plaintiffs shall not state, reference, or suggest a specific dollar sum to the jury related to their compensatory[2] or punitive damages. *Mohr v. Sec. Credit Servs., LLC*, No. 114CV981MADCFH, 2016 WL 6638198, at *6 (N.D.N.Y. July 6, 2016) ("plaintiff may decline to provide a numerical calculation, but if he should decline to provide such figure or calculation, he will not be permitted to introduce or suggest to the trier of fact a specific figure as to his . . . damages.").

### 16. Any Reference, Statement, or Argument Related to Undisclosed Mitigation of Damages by Any Plaintiff.

Defendants have requested all information related to mitigation of damages from Plaintiffs and Plaintiffs have produced discovery responses and documents related thereto. Any reference, question, statement, allusion to, or testimony by Plaintiffs, their attorneys, or their witnesses regarding Plaintiffs' attempts to mitigate their damages that were not disclosed by Plaintiffs to Defendants in

---

[2] Except as it relates to the Plaintiff-Intervenors, who have listed specific numbers related to compensatory damages, but Defendants object to the amount of compensatory damages attributed to Ontaneda as it still references her miscarriage, which is the subject of Motion to Exclude/Motion in *Limine* 7. Ontaneda, however, has failed to update her initial disclosures to reflect same.

response to discovery seeking identification of the same is inappropriate and should be excluded. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37 (c)(1). *See Baker v. Baker, Dickenson & Co.*, 2013 WL 48866169 (E.D. Ky. 2013) (excluding evidence of mitigation attempts from September 4, 2008 to August 19, 2009 because plaintiff did not timely provide any record of those attempts); *Allstate Finance Corp. v. Zimmerman*, 330 F.2d 740, 744 (5th Cir. 1994) ("Where the burden of proof of a negative fact normally rests on one party, but the other party has peculiar knowledge or control of the evidence as to such matter, the burden rests on the latter to produce such evidence, and failing, the negative will be presumed to have been established").

**17.   Hearsay.**

The Parties agree not to reference, ask questions, make statements, allude to, or present testimony regarding what they have been told by anyone with knowledge concerning any of the issues or circumstances involved in this case that would amount to inadmissible hearsay.

**18.   Any Reference, Statement, or Argument Related to Defendants' Motions to Exclude and/or Motions in *Limine*.**

Any reference, question, statement, allusion to, or testimony by Plaintiffs, their attorneys or witnesses or any reference to the fact that Defendants have filed any Motions to Exclude Evidence or Motions in *Limine* requesting relief from this Court or that Defendants have in any manner attempted to limit or restrict the

presentation of evidence or that such relief has been granted or denied by this Court should be excluded.

## 19.   Bifurcation of Liability and Damages Phases of Trial

Any evidence presented, reference, question, statement, allusion to, or testimony by Plaintiffs, their attorneys, or witnesses to any damages that they may have suffered (including compensatory and punitive damages) allegedly as a result of their employment with Defendants ending or any alleged hostile work environment, would prejudice Defendants by confusing or misleading the jury prior to a determination of liability, and should therefore be excluded during the liability phase of trial.

Bifurcation is in the discretion of the district court. *Hopkins v. Nat'l R.R. Passenger Corp.*, No. 08CV2965NGGRML, 2016 WL 1588499, at *1 (E.D.N.Y. Apr. 19, 2016) (citing to *Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 15 (2d Cir. 1988)). Bifurcation is appropriate where "litigation of the first issue might eliminate the need to litigate the second issue or where one party will be prejudiced by evidence presented against another party." *Id.* (citing to *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999)). District courts should examine the facts of each case to determine "whether bifurcation is needed to avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen or eliminate the likelihood of juror confusion." *Id.* (citing to *Lewis v. City of New York*, 689 F. Supp. 2d 417, 429 (E.D.N.Y 2010)). "Bifurcation is warranted when the evidence relevant to the damages issue could have a prejudicial impact upon the jury's liability determination." *Mineo v. City of*

*N.Y.*, No. 09-CV-2261 RRM MDG, 2013 WL 1334322, at *2 (E.D.N.Y. Mar. 29, 2013) (internal citations and quotations omitted.)

Risk of prejudice is especially true in this case where Plaintiffs seek compensatory damages based on emotional distress and punitive damages. *Id.* This sort of evidence and testimony is likely to confuse or mislead the jury by evoking sympathy for Plaintiffs prior to proving liability, this would result in prejudice the Defendants. Courts in this Circuit have found that "[e]vidence of harm to a plaintiff, regardless of the cause, may result in sympathetic jurors more concerned with compensating plaintiff for his injury than whether or not defendant is at fault," which leads to a defendant being prejudiced. *Id.* (quoting *Buscemi v. Pepsico, Inc.*, 736 F. Supp. 1267, 1272 (S.D.N.Y. 1990)).

As a result of the prejudice Defendants would be forced to endure absent bifurcation, Defendants request that the trial be bifurcated into liability and damages phases, if necessary, to be tried by the same jury. Trying the case, albeit in separate phases, to the same jury will preserve judicial economy. *Mineo*, 2013 WL 1334322, at *2. (Ordering damages to be tried immediately following liability portion, if necessary to the same jury); *see also Buscemi*, 736 F. Supp. 1267 (Ordering separate trials on liability and damages finding this would result in "little sacrifice to efficiency, convenience or judicial economy, and will serve the interests of justice" when tried by the same jury so that testimony would not have to be repeated.) Ultimately, this approach may result in conserving judicial resources since if the jury does not find liability, it will obviate the necessity for testimony

regarding damages. *Mineo*, 2013 WL 1334322, at *2; *see also Hopkins*, 2016 WL 1588499 (E.D.N.Y.), at *3 (finding bifurcation supported judicial economy because finding defendants not liable would spare the parties and court the cost and time of holding a trial on damages phase).

### C.    **CONCLUSION**

Accordingly, for the reasons listed herein, Defendants respectfully request that this Court Grant its Motion.


Dated:    March 1, 2017
          New York, New York

                              Respectfully submitted,

                              s/ Amy J. Traub
                              Amy J. Traub
                              Amanda L. Van Hoose Garofalo
                              E-mail: atraub@bakerlaw.com
                              E-mail: agarofalo@bakerlaw.com
                              **BAKER & HOSTETLER LLP**
                              45 Rockefeller Plaza
                              New York, New York 10111
                              Telephone: (212) 589-4200
                              Facsimile:  (212) 589-4201


                              Patrick M. Muldowney
                              E-mail:  pmuldowney@bakerlaw.com
                              **BAKER & HOSTETLER LLP**
                              200 S. Orange Avenue, Ste. 2300
                              Orlando, Florida  32801-0112
                              Telephone:  (407) 649-4000
                              Facsimile:  (407) 841-0168


                              ***Attorneys for Defendants***

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on March 1, 2017, I served the foregoing

Memorandum of Law in Support via e-mail upon the following:

Andrea Chinyere Ezie
E-Mail: andrea.ezie@eeoc.gov
Nora E. Curtin
E-Mail: nora.curtin@eeoc.gov
Robert D. Rose
E-Mail: Robert.rose@eeoc.gov
Kirsten J. Peters
E-mail: Kirsten.peters@eeoc.gov

**EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**
33 Whitehall Street, 5th Floor
New York, New York 10004

*Attorneys for Plaintiff*

Anthony G. Mango
E-Mail: amango@mandilaw.com
**MANGO & IACOVIELLO, LLP**
14 Penn Plaza, Suite 1919
New York, New York 10122

*Attorneys for Plaintiffs-Intervenors*

s/ Amy J. Traub
Amy J. Traub

31