UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

       Plaintiff,

   -against-

UNITED HEALTH PROGRAMS OF AMERICA,
INC. and COST CONTAINMENT GROUP,
INC.,

       Defendants.
---------------------------------X
---------------------------------X   14-CV-3673 (KAM)(JO)
ELIZABETH ONTANEDA, FRANCINE
PENNISI, and FAITH PABON,

      Plaintiffs-Intervenors,

   -against-

UNITED HEALTH PROGRAMS OF AMERICA,
INC. and COST CONTAINMENT GROUP,
INC.,

       Defendants.
---------------------------------X


**JURY INSTRUCTIONS**


1

## Table of Contents

PART I: GENERAL RULES......................................... 6

1.  Role of the Court ....................................... 6

2.  Role of the Jury ........................................ 6

3.  Conduct of Counsel ...................................... 8

4.  Types of Evidence ....................................... 9

    a.  What Is Evidence: ..................................... 9

    b.  What Is Not Evidence: ............................... 10

    c.  Direct and Circumstantial Evidence: ................. 11

5.  Inferences ............................................. 12

6.  Matters the Jury May Not Consider – Bias and Sympathy .. 13

7.  Burden of Proof ........................................ 14

8.  Multiple Plaintiffs and Multiple Claims ............... 15

9.  Witness Credibility ................................... 16

10.  Interested Witnesses ................................. 17

11.  Impeachment of a Witness ............................. 18

12.  Discrepancies in Testimony ........................... 19

13.  No Duty to Call Witnesses or Produce Evidence ........ 20

14.  Deposition Testimony ................................. 21

15.  Practices Deemed Religious for the Purposes of this Lawsuit
     21

PART II: ELEMENTS OF THE CLAIMS............................. 24

1.  Plaintiff EEOC and Plaintiff-Intervenors .............. 25

2.  Title VII (42 U.S.C. § 2000e) ......................... 26

3.  New York State Human Rights Law (NYSHRL) .............. 28

4.  HOSTILE WORK ENVIRONMENT .............................. 28

5.  HOSTILE WORK ENVIRONMENT – *Element One*: Hostile or Abusive
Work Environment ......................................... 29

6.  HOSTILE WORK ENVIRONMENT – *Element Two*: Imputing Hostile
Work Environment to Defendants ........................... 30

    a.  HOSTILE WORK ENVIRONMENT – *Element Two*: Imputing Hostile
    Work Environment to Defendants Based on Proxy or Alter-Ego 31

b.   HOSTILE WORK ENVIRONMENT – *Element Two*: Imputing Hostile Work Environment to Defendants Based on Supervisor Conduct that Results in Tangible Employment Action ..................... 32

c.   HOSTILE WORK ENVIRONMENT – *Element Two*: Imputing Hostile Work Environment to Defendants Based on Supervisor Conduct Does Not Result in Tangible Employment Action .................. 33

d.   HOSTILE WORK ENVIRONMENT – *Element Two*: Imputing Hostile Work Environment to Defendants Based on a Consultant's Actions 35

7.   Constructive Discharge ................................. 36

8.   DISPARATE TREATMENT – Reverse Religious Discrimination . 38

9.   DISPARATE TREATMENT – Reverse Religious Discrimination – *Element One*: Adverse Employment Action ...................... 39

10.   DISPARATE TREATMENT – Reverse Religious Discrimination – *Element Two*: Adverse Employment Action Motivated, at Least in Part, by Religious Discrimination .......................... 40

11.   DISPARATE TREATMENT – Traditional Religious Discrimination 41

12.   DISPARATE TREATMENT – Traditional Religious Discrimination *and* Reverse Religious Discrimination – *Element Two*: Actual Decision-Maker Influenced by Someone Else's Discriminatory Intent .................................................. 42

13.   DISPARATE TREATMENT – Traditional Religious Discrimination *and* Reverse Religious Discrimination –*Element Two*: Comparators 43

14.   DISPARATE TREATMENT – Traditional Religious Discrimination *and* Reverse Religious Discrimination – *Element Two*: Pretext . 44

15.   RETALIATION ......................................... 45

PART III: DAMAGES......................................... 48

1.   Damages Generally ..................................... 48

2.   Compensatory Damages .................................. 48

3.   Punitive Damages ..................................... 52

PART IV: DELIBERATIONS..................................... 54

1.   Selection of a Foreperson ............................ 54

2.   Duty to Deliberate ................................... 54

3.   Right to See Evidence ................................ 55

4.   Communications with the Court ........................ 56

5.   Communication with Others ............................ 56

6.   Return of Verdict ..................................... 57

7.    Conclusion ............................................ 58

MATSUMOTO, United States District Judge:

## INTRODUCTION

Ladies and gentlemen of the jury, I told you at the very start of the trial that your principal function during the trial would be to listen carefully and observe each witness who testified. It has been obvious to me and to counsel that you have faithfully discharged this duty, and I thank you for your attentiveness and service. I ask that you now give me that same careful attention that you gave at trial as I instruct you. Now that the evidence in this case has been presented and the attorneys for the plaintiffs and the defendants have concluded their closing arguments, it is my responsibility to instruct you as to the law that governs this case. My instructions will be in four parts:

First, I will state some general rules about your role and the way in which you are to review the evidence in this case;

Second, I will instruct you as to the legal elements of the claims in this case, that is, the specific elements that each of the plaintiffs must prove by a preponderance of the evidence;

Third, I will instruct you as to damages; and

Fourth, I will give you some general rules regarding your deliberations.

You should not single out any one instruction I give you as alone stating the law. Rather, you should consider these

instructions as a whole when you retire to the jury room to deliberate on your verdict.

## PART I: GENERAL RULES

### 1. Role of the Court

Leonard Sand et. al., Modern Federal Jury Instructions-Civil (2010) ("Sand"), Instruction, 71-2.

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be — or ought to be — it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

### 2. Role of the Jury

Sand, Instruction, 71-3, 71-5.

As members of the jury, you are the sole and exclusive judges of the facts. Your role is to pass upon the weight of the evidence; determine the credibility of the witnesses; resolve such conflicts as there may be in the testimony; and draw whatever reasonable inferences you decide to draw from the facts as you have determined them.

In determining these issues, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. Nor is what I may have said — or what I may say in these instructions — about a fact of evidence.

Because you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the plaintiffs have proven their case.

I also ask you to draw no inference from the fact that, upon occasion, I asked questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses.

You are expressly to understand that the court has no opinion as to the verdict you should render in this case. You are to perform the duty of finding the facts without bias or prejudice to any party.

I know you will try the issues that have been presented to you according to the oath you have taken as jurors, in which you promised that you would well and truly try the issues joined in this case and a true verdict render. If you follow that oath, and try the issues without fear or prejudice or bias or sympathy, you will arrive at a true and just verdict.

### 3. **Conduct of Counsel**

Sand, Instruction, 71-6.

It is the duty of the attorneys on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. The parties also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All those questions of law must be decided by me, the court. You should not show any prejudice against any party because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

As I already explained, my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any

opinion as to the weight or effect of such evidence.  You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.  Your verdict should be based on the facts as found by you from the evidence and the law as instructed by the court.

In this case, I would like to express my gratitude to each of the attorneys for their conscientious efforts on behalf of their clients and for work well done.

**4. Types of Evidence**

Sand, Instruction, 74-1, 74-2, 74-4.

I now will instruct you as to what is evidence and how you should consider it.

**a. What Is Evidence:**

The evidence in this case comes in several forms:

1.   Sworn testimony of witnesses, both on direct and cross-examination;

2.   Exhibits that have been received by the court in evidence; and

3.   Facts to which all the attorneys have agreed or stipulated.  A stipulation means simply that the plaintiffs and the defendants accept the truth of a particular proposition or fact.  You must accept the stipulation as evidence and regard

that fact as proved, to be given whatever weight you choose.

If evidence was received for a limited purpose, you must consider that evidence for that limited purpose only.

**b. What Is Not Evidence:**

Certain things are not evidence and are to be disregarded by you in deciding what the facts are:

1. Arguments or statements by the attorneys are not evidence.

2. A lawyer's questions in and of themselves are not evidence - only the answer constitutes evidence.

3. Objections to the questions or to offered exhibits are not evidence. Attorneys have a duty to object when they believe evidence should not be received. You should not be influenced by the objection or by the court's ruling on it. If the objection was sustained, ignore the question and answer to it. If the objection was overruled, treat the answer like any other answer.

4. Any testimony that was stricken by the court is to be disregarded and is not evidence.

5. Any exhibits identified, but not admitted into evidence by the court, are not evidence.

6.    Obviously, anything you may have seen or heard outside the courtroom is not evidence.

7.    Courtroom Behavior: During the course of the trial, I may have questioned witnesses.  I also may have had limited colloquy, debate, and argument with the attorneys.  The jury should not draw any inferences from observing these interactions.  They were conducted for the sole purpose of insuring the orderly and clear presentation of evidence to you, the jury.

Your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

**c. Direct and Circumstantial Evidence:**

I told you that evidence comes in various forms, such as the sworn testimony of witnesses, exhibits, and stipulations. There are, in addition, different types of evidence - direct and circumstantial.

1.    <u>Direct evidence</u>:  Direct evidence is physical evidence or testimony about a fact by an eyewitness or participant who testifies to knowing that fact through one of the five senses.

2.    <u>Circumstantial evidence</u>:  Circumstantial evidence is the proof of a chain of circumstances pointing to the existence or nonexistence of certain

11

facts.  That is all there is to circumstantial evidence: based on facts that you find have been proved, you draw such reasonable inferences or conclusions as seem justified in light of your experience and common sense.  Whether a given inference should be drawn is entirely a matter for you, the jury, to decide.  Please bear in mind, however, that an inference is not to be drawn by guesswork or speculation.

The law makes no distinction between direct and circumstantial evidence.  You may consider both.

### 5. Inferences

Sand, Instruction, 75-1.

During the trial you may have heard the attorneys use the term "inference."  In the attorneys' arguments, they have asked you to infer, on the basis of your reason, experience and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact which you find exists.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiffs ask you to draw one set of inferences, while the

12

defendants ask you to draw another.  It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a deduction or conclusion which you, the jury, are permitted to draw — but are not required to draw — from the facts which have been established by either direct or circumstantial evidence.  In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

### 6. Matters the Jury May Not Consider – Bias and Sympathy

Sand, Instruction, 71-9, 71-10.

Your verdict must be based solely upon the evidence presented at this trial or the lack of evidence.

It would be improper for you to consider any personal feelings you may have about one of the parties' race, religion, national origin, gender, or age.  It would be equally improper for you to allow any feelings you might have about the nature of the claim against the defendants to influence you in any way.  The parties in this case are entitled to a trial free from prejudice. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

Similarly, under your oath as jurors you are not to be swayed by sympathy.  You should be guided solely by the evidence presented during the trial, without regard to the consequences of your decision.

You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence or lack of evidence.  If you let sympathy interfere with your clear thinking, there is a risk that you will not arrive at a just verdict.  All parties to a civil lawsuit are entitled to a fair trial.  You must make a fair and impartial decision so that you will arrive at the just verdict.

## 7. Burden of Proof

Sand, Instruction, 73-1, 73-2.

This is a civil case and, as such, the plaintiffs have the burden of proving the material allegations of their complaint by a preponderance of the evidence.  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.  In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them,

14

and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between a certain plaintiff and the defendants — that it is equally probable that one side is right as it is that the other side is right — then you must decide that issue against that plaintiff.  That is because each plaintiff bears the burden to prove more than simple equality of evidence — she must prove each element at issue by a preponderance of the evidence.  On the other hand, each plaintiff need prove no more than a preponderance. As long as you find that the scales tip, however slightly, in favor of a certain plaintiff, then that element will have been proved by a preponderance of evidence.  The preponderance of the evidence, incidentally, does not refer to the number of witnesses or to the quantity of proof, but rather to its quality, its reliability and persuasiveness in establishing whether the essential facts are more likely true than not.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should put it out of your mind.

## 8. __Multiple Plaintiffs and Multiple Claims__

Although the EEOC is representing the interests of ten individual plaintiffs, you are not to treat the ten plaintiffs as

one person.  Each plaintiff is entitled to separate consideration, and each plaintiff must prove her own claims against the defendants.  Similarly, the defendants are entitled to fair consideration of each claim by each plaintiff against the defendants.

## 9. Witness Credibility

Sand, Instruction, 76-1.

You have had the opportunity to observe all of the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any

interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which she or he testified; the accuracy of her or his memory; her or his candor or lack of candor; her or his intelligence; the reasonableness and probability of her or his testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness's memory;

3. the witness's manner while testifying;

4. the witness's interest in the outcome of the case and any bias or prejudice;

5. whether other evidence contradicted the witness' testimony;

6. the reasonableness of the witness's testimony in light of all the evidence; and

7. any other factors that bear on believability.

**10.      __Interested Witnesses__**

Sand, Instruction, 76-2.

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. For example, both plaintiffs and defendants have an interest in prevailing at trial. An interest in the outcome may create a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter what their interest in the outcome of the case may be, would testify truthfully. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

**11.     Impeachment of a Witness**

Sand, Instruction, 76-5.

You have heard evidence that at some earlier time the witness has said or done something which counsel argues is inconsistent with the witness's trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself or herself. If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent and, if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

12. **Discrepancies in Testimony**

Sand, Instruction, 76-4.

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such

19

discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness's entire testimony. On the other hand, discrepancies in a witness's testimony or between his testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict himself or herself. It is also a fact that two people witnessing an event will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance, but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment.

13.   **<u>No Duty to Call Witnesses or Produce Evidence</u>**

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party

to produce as exhibits all papers and things mentioned in the evidence in this case.

**14.    Deposition Testimony**

Sand, Instruction 74-14.

The sworn testimony of Linda "Denali" Jordan was presented to you by reading portions of her May 12, 2015 deposition. That testimony is in evidence at this trial because Ms. Jordan was not available to testify at trial. A deposition is a procedure where, prior to trial, the attorneys for a party may question a witness or an adversary party or witness under oath before a court stenographer. This is part of the pretrial discovery process, and each side is entitled to take depositions. Although you are not able to evaluate Ms. Jordan's credibility because she did not testify at trial, you may decide what weight to give Ms. Jordan's deposition testimony, as you would the testimony of a witness at trial. Do not place any significance on the identity, behavior, or tone of voice of any person reading the questions and answers from Ms. Jordan's deposition.

**15.    Practices Deemed Religious for the Purposes of this Lawsuit**

ECF No. 186, Stipulation Regarding Practices Deemed Religious by the Court.

At the beginning of this trial, I instructed you as to which alleged practices I already determined to be religious. Those practices are:

- Texts, beliefs, concepts and practices, which may concern Onionhead and Harnessing Happiness, including meetings, workshops, prayers, Onionhead pins, and Onionhead documents such as "Declaration of Virtues for Empowerment", Onionhead "Keys and Codes to Living Good", "Onionhead Dictionary of 150 Emotions: Teen and Adult Edition", and "The 13 Codes of Caring of Teens and Adults");

- Statements by Chief Executive Officer Robert Hodes or by Denali Jordan telling employees they were "chosen";

- Statements by Denali Jordan that "God loves us all";

- Statements by Denali Jordan regarding demons or angels;

- Hugging, kissing, hand-holding, or expressing love related to work;

- Orders to refrain from using overhead lights "in order to prevent demons from entering the workplace through the lights";

- Universal Truth Cards;

- The use of candles to cleanse the workplace;

- Chanting in the workplace;

- Praying in the workplace;

- The use of pins and candles; and

22

- Emails referencing God, spirituality, demons, Satan, divine destinies, the "Source", purity, blessings, miracles, "higher-guidance teachings," and a grail.

   For any practices discussed in this trial other than those which I just listed, you, as the jury, can decide whether those other activities are religious in nature.

## PART II: ELEMENTS OF THE CLAIMS

I will now discuss the second part of these instructions – the principles of law that you must apply to the facts as you determine them to be. You are reminded that the plaintiffs bear the burden of proving every essential element of each of their claims by a preponderance of the evidence.

Plaintiffs allege that defendants, United Health Programs of America, Inc. (UHP) and Cost Containment Group, Inc. (CCG), required the ten plaintiffs to engage in religious practices affiliated with a program known as Onionhead or Harnessing Happiness at the defendants' work place. Plaintiffs allege that nine of the ten plaintiffs to a hostile work environment, and also discriminated against and/or discharged nine plaintiffs, and retaliated against one plaintiff, who complained about or objected to defendants' religious activities. Plaintiffs seek to recover backpay, front pay, and/or compensatory and punitive damages.

Defendants contend that they did not subject plaintiffs to a hostile work environment, or discriminate or retaliate against plaintiffs on the basis of religion. Instead, defendants contend that they endeavored to create a welcoming and calming work atmosphere. They maintain that the Onionhead and Harnessing Happiness practices were neither the impetus nor the justification for the defendants' work environment, benefits, or employment

decisions, nor was any individual plaintiff's religion a factor in employment decisions.

### 1. Plaintiff EEOC and Plaintiff-Intervenors

42 U.S.C. § 2000e *et seq.*; *EEOC v. Waffle House*, 534 U.S. 279, 287-88, 291 (2002); *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 323-26 (1980); *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 119-121 (2d Cir. 2008); *EEOC v. Rappaport et al.*, 273 F. Supp. 2d 260, 263 (E.D.N.Y. 2003).

As you heard at the beginning of this trial, the Equal Employment Opportunity Commission, or EEOC, is the lead plaintiff in this case. The EEOC is the federal agency responsible for enforcing federal laws prohibiting discrimination in the workplace, including Title VII of the Civil Rights Act of 1964, which I will refer to as Title VII.

In this case, the EEOC represents the interests of ten of defendants' former employees who were allegedly discriminated against because of religion, in violation of Title VII. I will refer to these employees as the plaintiffs. These ten plaintiffs are Francine Pennisi, Elizabeth Ontaneda, Faith Pabon, Jennifer Honohan, Cynthia Pegullo, Danielle Diaz, Sandra Benedict, Karen Josey, Regina Maldari, and Elizabeth Safara.

Title VII grants individuals the unconditional right to intervene in actions initiated by the EEOC on their behalf. Plaintiffs Elizabeth Ontaneda, Francine Pennisi, and Faith Pabon elected to intervene and also bring supplemental claims under New York state law. Plaintiffs Ontaneda, Pennisi, and Pabon's

interests in this action are being represented by the EEOC as well as Attorney Anthony Mango of Mango Iacoviello, LLP. That is why they are referred to as plaintiffs as well as plaintiff-intervenors.

For purposes of these instructions, I will be using the term "plaintiffs" to refer collectively to Plaintiff EEOC and the ten individuals.

## 2. Title VII (42 U.S.C. § 2000e)

Sand, Instruction 88-42; 42 U.S.C. § 2000e.

All of the plaintiffs base their lawsuit on Title VII of the Civil Rights Act of 1964. The Act provides in pertinent part that it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to the employee's compensation, terms, conditions, or privileges of employment because of such individual's religion, among other things.

An unlawful employment practice is established when the complaining party demonstrates that religion was a motivating factor in any employment practice, even though other factors may have also motivated the practice. A motivating factor is a factor that played some part in the defendants' employment practice decision.

This case involves five separate types of claims under Title VII based on religious discrimination:

1. Nine plaintiffs – Pennisi, Ontaneda, Honohan, Pegullo, Diaz, Benedict, Josey, Maldari, and Safara – claim that they were subjected to a hostile work environment on the basis of religion;

2. Nine plaintiffs – Pennisi, Ontaneda, Honohan, Pegullo, Diaz, Benedict, Josey, Maldari, and Pabon – claim that they were discriminated against in the form of wrongful termination, at least in part, for rejecting defendants' religious practices;

3. Two plaintiffs – Ontaneda and Pennisi – claim they were discriminated against in the form of an adverse employment action other than termination, at least in part, for rejecting defendants' religious practices;

4. One plaintiff – Pennisi – claims she was discriminated against in the form of an adverse employment action other than termination, at least in part, on the basis of Pennisi's personal religious beliefs, namely Catholicism; and

5. One plaintiff – Pennisi – claims she was retaliated against for engaging in protected activity, such as complaining about or objecting to defendants' religious practices.

27

### 3. New York State Human Rights Law (NYSHRL)

New York Executive Law § 296(1)(a), (e), (6); *Chavis v. Wal-Mart Stores, Inc.*, 265 F. Supp. 3d 391, 398 (S.D.N.Y. 2017); *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999).

The plaintiff-intervenors – Ontaneda, Pennisi, and Pabon – also have claims based on the New York State Human Rights Law, which I will refer to as the NYSHRL. New York State enacted Executive Law 296, or the NYSHRL, to eliminate and prevent discrimination in, among other things, employment on the basis of religion, among other characteristics.

With respect to the NYSHRL: all three plaintiff-intervenors, Ontaneda, Pennisi, and Pabon, are bringing discrimination claims; Pennisi and Ontaneda are bringing hostile work environment claims; and only Pennisi is bringing a retaliation claim. The bases for these claims are the same as their claims under Title VII.

Because of the similarities between Title VII and the NYSHRL, the claims are evaluated using the same legal framework, regardless of the law under which they have been brought. In other words, if you find that a plaintiff-intervenor has proved her claim under Title VII, she has also proven her claim under NYSHRL.

### 4. HOSTILE WORK ENVIRONMENT

*Feingold v. New York*, 366 F.3d 138, 149-50 (2d Cir. 2004); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78, 81 (1998); *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002); *Clark County School Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001).

Nine of the ten plaintiffs — Benedict, Diaz, Honohan, Josey, Maldari, Ontaneda, Pegullo, Pennisi, and Safara — allege that they were subjected to a "hostile work environment" based on religion.  A hostile work environment exists when two general elements are satisfied:

Element One, the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive or hostile working environment; and

Element Two, the plaintiff demonstrates a specific basis for imputing the conduct creating the hostile work environment to the employer.

Next, I will discuss those two elements in more detail.

## 5. HOSTILE WORK ENVIRONMENT – *Element One*: Hostile or Abusive Work Environment

Sand, Instruction 88-45; *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993); *Feingold v. New York*, 366 F.3d 138, 149-50 (2d Cir. 2004); *Alfano v. Costello*, 294 F.3d 365, 373-74 (2d Cir. 2002); *Clark County School Dist. v. Breeden*, 532 U.S. 268, 271 (2001); *St. Louis v. N.Y.C. Health & Hosp. Corp.*, 682 F. Supp. 2d 216, 234 (E.D.N.Y. 2010).

Element one of a hostile work environment claim requires that a plaintiff demonstrate the following by a preponderance of the evidence:

First, the plaintiff was subjected to unwelcome harassment, ridicule, insult, discriminatory intimidation, or other abusive conduct;

Second, that conduct was motivated, at least in part, by religion; and

Third, the conduct was so severe or pervasive that the plaintiff subjectively found, *and* a reasonable person in plaintiff's position would objectively find, the work environment so hostile or offensive that it would interfere with her work performance.

To determine whether a plaintiff satisfied this element, you should examine the totality of the circumstances, including, but not limited to: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance; and the effect on plaintiff's psychological well-being.  No single factor is required.

A single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace, but other isolated incidents, simple teasing, and offhand comments alone cannot create a hostile work environment.

## 6. HOSTILE WORK ENVIRONMENT – *Element Two*: Imputing Hostile Work Environment to Defendants

Sand, Instruction 88-45.

Element two of a hostile work environment claim requires that a plaintiff demonstrate by a preponderance of the evidence that the defendants' management employees knew, or should have known, of the abusive conduct. Plaintiffs contend that there are four bases under which the hostile work environment may be imputed to defendants. Plaintiffs may satisfy element two if they have proven by a preponderance of the evidence that a hostile work environment may be imputed to defendants pursuant to any of the four different bases. Different standards apply to determine element two, depending upon which person or persons, if any, are responsible for establishing, creating, or maintaining the hostile work environment.

The four different bases on which defendants may be liable are as follows: (a) proxy or alter-ego; (b) supervisory conduct that results in a tangible employment action; (c) supervisory conduct that does not result in a tangible employment action; and (d) a consultant's actions. Next, I will discuss the four different standards in more detail.

### a. HOSTILE WORK ENVIRONMENT – *Element Two*: Imputing Hostile Work Environment to Defendants Based on Proxy or Alter-Ego

*Faragher v. City of Boca Raton*, 524 U.S. 775, 789–90 (1998); *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 52–53 (2d Cir. 2012); ECF No. 175, Joint Second Amended Pre-Trial Order at 13.

If you determine that the individual(s) responsible for creating a hostile work environment at defendants' workplace were the proxy or alter-ego of the defendant employers, then defendants, UHP and CCG, are strictly liable for the conduct without resort to any defense.

A company's proxy or alter-ego is someone like a president, vice president, owner, or corporate officer, or a supervisor holding a sufficiently high position in the management hierarchy. If you find that defendants' corporate officers – that is to say, Vice President and Chief Operating Officer Tracy Bourandas or President and Chief Executive Officer Robert Hodes – subjected a plaintiff to a religiously hostile work environment at defendants' company, defendants are automatically liable with respect to that plaintiff.

### b. HOSTILE WORK ENVIRONMENT – *Element Two*: Imputing Hostile Work Environment to Defendants Based on Supervisor Conduct that Results in Tangible Employment Action

*Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443-44, 2446 n.8 (2013); *Burlington Industries v. Ellerth*, 524 U.S. 742, 765 (1998); *EEOC v. UHP*, 213 F. Supp. 3d 377, 418 (E.D.N.Y. 2016).

If you determine that the individuals who were responsible for the hostile work environment were defendants' supervisors, defendants will be held strictly liable if the supervisors' conduct culminated in tangible employment action for a plaintiff who was subjected to the hostile work environment.

A supervisor is someone who is empowered by the employer to take tangible employment actions to effect a significant change in employment status. Someone may also be considered a supervisor if the individual makes employment decisions subject to higher management approval or if an employer has effectively delegated the power to take tangible actions to the employees on whose recommendations the employer relies.

The parties agree that Ms. Bourandas, Mr. Hodes, and Ms. Levine are supervisors. The parties disagree, however, as to whether Ms. Jordan is a supervisor. It is up to you, the jury, to determine whether Ms. Jordan is in fact a supervisor.

A tangible employment action is one that effects a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

### c. HOSTILE WORK ENVIRONMENT – *Element Two*: Imputing Hostile Work Environment to Defendants Based on Supervisor Conduct Does Not Result in Tangible Employment Action

*Burlington Industries v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-09 (1998); *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245-46 (2d Cir. 2001); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104-05 (2d Cir. 2010); *Brabson v. The Friendship House of Western New York*, 46 F. App'x 14, 17 (2d Cir. 2002).

If you determine that the individual(s) responsible for creating a hostile work environment were defendants' supervisors

and their actions did not result in a tangible adverse employment action, defendants will be held strictly liable unless defendants prove the elements of an affirmative defense by a preponderance of the evidence.  The elements of the affirmative defense with respect to each plaintiff's claim of hostile work environment are as follows:

First, defendants must prove that they exercised reasonable care to prevent harassment in the workplace on the basis of religion, and also exercised reasonable care to promptly correct any harassing behavior that did occur with respect to a plaintiff; and

Second, defendants must prove that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities, if any, that defendants provide to employees.

Defendants can satisfy the second element of this affirmative defense by proving the following by a preponderance of the evidence:

1. Defendants established an explicit policy against religious harassment in the workplace;

2. That policy was fully communicated to its employees;

3. That policy provided a reasonable way for employees to make a claim of harassment to higher management;

4. Reasonable steps were taken to correct any problems that a given plaintiff had.

If you determine that a plaintiff complained to a supervisor – as I already defined that term – then you must deny defendants' affirmative defense with respect to that plaintiff.

If you determine that defendants established that a plaintiff failed to complain about the hostile work environment, then you must consider whether the plaintiff's failure to complain was reasonable or unreasonable. To determine whether such failure was reasonable or not, you may consider factors such as whether the plaintiff had a reason to believe she would be retaliated against, whether other employee complaints had been ignored or resisted, or whether the complaint process at the company was burdensome or intimidating — including because complaints were handled by the same management and supervisory personnel responsible for the discrimination, retaliation, or hostile work environment alleged by plaintiffs. However, a generalized fear of making a complaint is not sufficient, nor is a co-worker's vague and ambiguous complaint that was not taken seriously.

> **d. HOSTILE WORK ENVIRONMENT – *Element Two*: Imputing Hostile Work Environment to Defendants Based on a Consultant's Actions**

*Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443 (2013); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir. 2011).

If you determine that the individual(s) who were responsible for the hostile work environment were defendants' consultant, defendants will be liable if they knew or should have known about the hostile work environment as it related to the individual plaintiffs and failed to take immediate and appropriate action to stop it.

Defendants should have known of the hostile work environment if:

1. An employee provided management level personnel with enough information to raise a probability in the mind of a reasonable employer that a hostile work environment existed; or

2. The challenged conduct was so commonplace that a reasonable employer would have to have been aware of it.

If you find that defendants knew or should have known about the hostile work environment caused by a consultant, then you should consider whether defendants' response showed indifference or unreasonableness. An employer has acted unreasonably if it either provides no reasonable avenue for complaint or knows about the harassment and does nothing.

## 7. Constructive Discharge

Sand, Instruction 88-47; *Petrosino v. Bell Atlantic*, 385 F.3d 210, 229-30 (2d Cir. 2004); *Nazinitsky v. Fairmont Ins. Brokers, Ltd.*, No. 06-cv-5555, 2010 WL 836766, at *12 (E.D.N.Y. Mar. 8, 2010).

If you determine that the hostile work environment was imputed to defendants based on supervisory action, you may find that any plaintiff who was not terminated by defendants was nonetheless subjected to a tangible employment action if you find that she was constructively discharged. The parties dispute whether plaintiffs Benedict and Pabon were terminated or quit their jobs. Plaintiff Safara admits that she quit. You may determine whether the circumstances under which employment at defendants' company ended for plaintiffs Benedict, Pabon, and Safara satisfy the requirements of constructive discharge.

A plaintiff is constructively discharged if all of the following elements have been proved by a preponderance of the evidence:

First, defendants' made the plaintiff's working conditions intolerable;

Second, the plaintiff's rejection of defendants' religion was a motivating factor in the defendants' actions; and

Third, the plaintiff's resignation was a reasonably foreseeable result of defendants' actions and/or the defendants acted with the intent of forcing the plaintiff to quit.

Working conditions are intolerable if a reasonable person in the plaintiff's situation would have deemed resignation the only reasonable alternative or would feel compelled to resign.

37

## 8. DISPARATE TREATMENT – Reverse Religious Discrimination

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981); *Mandell v. County of Suffolk*, 316 F.3d 368, 378 (2d Cir. 2003); *Shapiola v. Los Alamos Nat. Laboratory*, 992 F.2d 1033, 1037-38 (10th Cir. 1993); *Noyes v. Kelly Services*, 488 F.3d 1163, 1168-69 (9th Cir. 2007).

As I previously mentioned, under Title VII and the NYSHRL, it is unlawful for an employer to subject an employee to discriminatory treatment on the basis of religion. Nine plaintiffs – Ontaneda, Pennisi, Pabon, Honohan, Pegullo, Diaz, Benedict, Maldari, and Josey – assert disparate treatment claims based on religion in violation of Title VII and, with respect to Ontaneda, Pennisi, and Pabon, the NYSHRL. Specifically, they claim that they were discriminated against for rejecting defendants' religious practices – I will refer to this type of disparate treatment as reverse religious discrimination.

To prove a reverse religious discrimination claim, a plaintiff must prove, by a preponderance of the evidence, two elements:

First, the plaintiff must prove that it is more likely than not that defendants took an adverse employment action against her; and

Second, the plaintiff must prove that it is more likely than not that defendants' adverse action was motivated, at least in part, by that plaintiff's rejection of defendants' religious practices.

38

I will explain each of these elements in more detail.

### 9. DISPARATE TREATMENT – Reverse Religious Discrimination – *Element One*: Adverse Employment Action

*Sethi v. Narod*, 12 F. Supp. 3d 505, 523 (E.D.N.Y. 2014); *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).

With respect to the element one of a reverse religious discrimination claim, an "adverse employment action" is one that changes the terms and conditions of employment, such as discharge, demotion, refusal to promote, reprimand, decrease in wage or salary, a less distinguished title, material loss of benefits, or significantly diminished material responsibilities. However, minor inconveniences are not adverse employment actions.

Defendants admit that they terminated plaintiffs Diaz, Honohan, Josey, Pegullo, Maldari, and Pennisi. Therefore, the requirement of an adverse employment action has already been satisfied with respect to their claims for wrongful termination.

Plaintiffs admit that plaintiff Safara quit her job at the defendant company.

The parties dispute whether defendants subjected plaintiffs Benedict and Pabon to adverse employment actions in the form of termination. Plaintiffs claim that Benedict and Pabon were terminated. They also claim that plaintiffs Ontaneda and Pennisi were subject to adverse employment action separate from and in addition to their termination. Defendants deny terminating Benedict and Pabon, or otherwise subjecting Ontaneda or Pennisi to

adverse employment actions.  Accordingly, you, the jury, must determine whether plaintiffs have established by a preponderance of the evidence that defendants subjected plaintiffs Benedict and Pabon to an adverse employment action in the form of termination and plaintiffs Pennisi and Ontaneda to an adverse employment action other than termination.

### 10.   DISPARATE TREATMENT – Reverse Religious Discrimination – *Element Two*: Adverse Employment Action Motivated, at Least in Part, by Religious Discrimination

Sand, Instruction 88-43; *Mandell v. County of Suffolk*, 316 F.3d 368, 378 (2d Cir. 2003); *Shapolia v. Los Alamos Nat. Laboratory*, 992 F.2d 1033, 1038 (10th Cir. 1993).

Element two of plaintiffs' reverse religious discrimination claims requires that each plaintiff prove by a preponderance of the evidence that defendants' actions were motivated, at least in part, by the plaintiff's rejection of defendants' religion.  Such rejection may include resisting or failing to hold or follow defendants' religious beliefs or participate in defendants' religious activities.

If you find that a given adverse employment decision made by defendants with respect to a plaintiff was motivated both by discriminatory and lawful reasons, you must decide whether the plaintiff is entitled to damages.  The plaintiff is entitled to damages unless the defendants prove by a preponderance of the evidence that the defendants would have made the same adverse

employment decision even if the discriminatory reason had played no role in the employment decision.

### 11.   DISPARATE TREATMENT – Traditional Religious Discrimination

Sand, Instruction 88-42; *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006); *Knight v. Connecticut Dept. of Public Health*, 275 F.3d 156, 167 (2d Cir. 2001); *Sanders v. New York City Human Resources Admin.*, 361 F.3d 749, 755 (2d Cir. 2004).

Plaintiff-Intervenor Pennisi also brings a claim that defendants discriminated against her on the basis of her religion, Catholicism.  I will refer to this as a traditional religious discrimination claim.  Pennisi claims that she was subjected to an adverse employment action other than termination, and was ultimately terminated, at least in part, based on her objection to participating in defendants' religious practices due to her Catholicism.

To prove Pennisi's traditional religious discrimination claim, Pennisi must prove by a preponderance of the evidence:

First, that defendants took an adverse employment action against Pennisi; and

Second, that Pennisi had a bona fide religious belief in Catholicism, and her beliefs were a motivating factor in defendants' decision to take the adverse employment action.

The standard for element one of this claim is the same as the standard for the adverse employment requirement of plaintiffs' reverse religious discrimination claims.  As I

previously mentioned, defendants' admit that they terminated Pennisi, but you must determine whether or not she was subject to undesirable transfer or reassignment of duties.

To prove the second element of Pennisi's traditional religious discrimination claim, plaintiffs are not required to prove that Pennisi's religion was the only reason for defendants' adverse employment action. Rather, plaintiffs' must prove by a preponderance of the evidence that Pennisi's religion was a motivating factor for defendants' action.

### 12. DISPARATE TREATMENT – Traditional Religious Discrimination *and* Reverse Religious Discrimination – *Element Two*: Actual Decision-Maker Influenced by Someone Else's Discriminatory Intent

*Vasquez v. Empress Ambulance Serv.*, 835 F.3d 267, 272, 274 (2d Cir. 2016); *Easaw v. Newport*, 253 F. Supp. 3d 22, 31-32 (D.D.C. 2017); *Backhaus v. General Motors LLC*, 54 F. Supp. 3d 741, 753-54 (E.D. Mich. 2014); *Staub v. Proctor Hosp.*, 562 U.S. 411, 421, 422 n.4 (2011); .

When determining whether the defendants' adverse employment decision was motivated either by a plaintiff's rejection of defendants' religious practices and beliefs or a plaintiff's own religious beliefs, you may consider whether the actual decision-maker was influenced by someone else for whom a plaintiff's religion or rejection of defendants' religion was a motivating factor.

If the person who influenced the actual decision-maker was a supervisor, to satisfy the element of discriminatory intent, you must find, by a preponderance of the evidence that:

First, the supervisor influencing the actual decision-maker made statements maligning the plaintiff with the intent to cause the adverse employment action with respect to that plaintiff; and

Second, the supervisor influencing the actual decision-maker proximately caused the adverse employment action with respect to the plaintiff.

If the person who influenced the actual decision-maker was not a supervisor, but was, instead, a lower-level employee or consultant, you must also find that defendants acted negligently by allowing the other person's acts to achieve the desired effect, though the defendants' knew, or reasonably should have known, of the discriminatory motivation.

### 13. DISPARATE TREATMENT – Traditional Religious Discrimination *and* Reverse Religious Discrimination – *Element Two*: Comparators

*Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 54 (2d Cir. 2014); *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010); *Graham v. Long Island R.R.*, 230 F.3d 34, 39-40 (2d Cir. 2000).

When determining whether a plaintiff was discriminated against on the basis of her rejection of defendants' religious beliefs or that plaintiff's personal religious beliefs, you may

compare that plaintiff's treatment to what I will refer to as a "comparator."

A comparator is an employee who is similarly situated to the plaintiff.  A co-employee is similarly situated to a plaintiff if (1) they were both subject to the same performance evaluation and discipline standards and (2) they both engaged in comparable conduct.  To determine whether two acts are of comparable seriousness, you should consider the context and surrounding circumstances of those acts.  In order to be a proper comparator, the comparator and the plaintiff do not have to hold precisely identical jobs or have participated in precisely identical conduct.  Rather, the comparator and the plaintiff must be similarly situated in all material respects.

### 14.   DISPARATE TREATMENT – Traditional Religious Discrimination *and* Reverse Religious Discrimination – *Element Two*: Pretext

Sand, Instruction 88-44.

Defendants have offered evidence that the adverse employment actions they did take with respect to plaintiffs were entirely for nondiscriminatory reasons.  That is, their decisions were not based on any plaintiff's alleged rejection of defendants' religious beliefs, or the plaintiff's claimed religious beliefs. Remember, with respect to both the traditional religious discrimination claim and the reverse religious discrimination claims, it is plaintiffs' burden to prove that at least one of the

44

motivating reasons was intentional religious discrimination. Moreover, remember that an employer may take adverse decisions against an employee for any reason, good or bad, as long as it is not discriminatory.

If you find that the reasons defendants gave for any of the adverse employment actions were "pretextual," that is, they were not the real reasons for the decision, then you may infer or not infer, as you choose, that the pretext was designed to conceal discrimination.

## 15.    RETALIATION

Sand, Instruction 88-46; *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 94-95 (2d Cir. 2001); *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir. 2000); *Feingold v. New York*, 366 F.3d 138, 156-57 (2d Cir. 2004); 42 U.S.C. § 2000e; *Millea v. Metro-North R.R.*, 658 F.3d 154, 163-64 (2d Cir. 2011); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001); *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).

Title VII and the NYSHRL make it unlawful for employers to retaliate against employees who engage in protected activities, such as complaining about workplace conduct they reasonably believe to be discriminatory.

Plaintiffs claim that defendants retaliated against plaintiff-intervenor Pennisi for complaining about the company's religious practices to management. Specifically, they allege that defendants subjected Pennisi to an undesirable transfer

within the office, assigned her less desirable tasks, and ultimately terminated her.

To succeed on this retaliation claim, plaintiffs must prove by a preponderance of the evidence that:

First, Pennisi engaged in protected activity;

Second, defendants knew about the protected activity;

Third, defendants subjected Pennisi to a materially adverse employment action; and

Fourth, there is a causal connection between Pennisi's protected activity and the adverse employment action to which she was subjected.

With respect to the first element, an employee engages in protected activity when she stands up, with words or actions, in good faith, indicates opposition to what she believes is unlawful religious discrimination. A formal complaint or grievance is not required.

With respect to the second element, plaintiffs must prove by a preponderance of the evidence that defendants knew of Pennisi's complaints of discrimination. Plaintiffs are not required to show that individual decision-makers within human resources knew of Pennisi's complaints. It is sufficient if plaintiffs show a general knowledge on the part of the defendants that Pennisi engaged in protected activity in the form of complaints of unlawful discrimination.

46

With respect to the third element, a materially adverse employment action is any action by the defendants that is likely to dissuade a reasonable employee in the plaintiff's position from exercising her legal rights.

With respect to the fourth element, causal connection, plaintiffs must establish by a preponderance of the evidence that a retaliatory motive played a part in the adverse employment action.  A causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.  However, there is no bright line regarding the amount of time that has passed between an employee engaging in protected activity and an adverse employment action.

## PART III: DAMAGES

### 1. Damages Generally

Sand, Instruction 77-1.

If a plaintiff has proven by a preponderance of the evidence that the defendants are liable for any given claims — that is, the hostile work environment, discrimination, reverse discrimination, or retaliation claims as I have described them — then you must determine the damages to which that plaintiff is entitled to recover for the injuries she sustained as a result of the claim or claims for which the defendants are liable.

You should not, however, infer that any of the plaintiffs is entitled to recover damages merely because I am instructing you on the elements of damages. It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance if you decide that a plaintiff is entitled to recovery. If you believe that a plaintiff has proven every element of any of her Title VII or NYSHRL claims by a preponderance of the credible evidence, then, and only then, should you consider the issue of damages. I will now define the types of damages you may award.

### 2. Compensatory Damages

Sand, Instruction 77-3, 88-70; *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1075 (10th Cir. 1998); *Perdue v. City University of New York*, 13 F. Supp. 2d 326, 337 (E.D.N.Y. 1998); *William v. District of Columbia*, 825 F. Supp. 2d 88, 102 (D.D.C. 2011); *Bender v. City of New York*, 78 F.3d 787, 794 (2d Cir. 1996); *Spruill v. Winner*

*Ford of Dover, Ltd.*, No. 94-cv-685, 1998 WL 186906, at *4 (D. Del. Apr. 6, 1998).

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which results from the defendants' violation of a plaintiff's rights. If you find that the defendants are liable on any of the plaintiffs' claims, as I have explained them, then you must award that plaintiff sufficient damages to compensate her for any injury proximately caused by the defendants' conduct.

These are known as "compensatory damages." Compensatory damages are designed to restore a plaintiff to the same position she was in prior to the injury — that is, to compensate the plaintiff for the damage suffered. Two types of compensatory damages are available in this case: (1) compensation for economic loss – any loss of salary, benefits, or any other economic loss; and (2) compensation for plaintiff's pain and suffering, mental anguish, humiliation, indignity, shock, discomfort, and embarrassment that she has suffered because of the defendants' conduct.

You shall award compensatory damages only for those injuries which you find that the plaintiffs have proven by a preponderance of the evidence. A plaintiff has an obligation to show sufficient facts and circumstances to permit you to make a reasonable estimate of each item of damages. If a plaintiff fails

to do that, then that plaintiff cannot recover for that item of damages. On the other hand, the law does not require that a plaintiff prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

Moreover, you shall award compensatory damages only for those injuries which you find a plaintiff has proven to have been the proximate result of conduct by the defendant in this case. That is, you may not simply award compensatory damages for any injury suffered by the plaintiff — you must award compensatory damages only for those injuries that were proximately caused by conduct of the defendants for which you have found the defendants liable.

You must determine the amount of damages to be awarded on each claim for which you find in plaintiff's favor. However, a plaintiff may not recover twice for the same injury. Therefore, if you find in a plaintiff's favor on two or more claims, and you find that any of those claims address the same injury, then you may not compensate that plaintiff twice for any damages she may have suffered for that shared injury. You may award additional damages only to the extent you find some aspect of injury that has not already been compensated for by another award.

A plaintiff may not recover for any injury that existed prior to the incidents at issue, or for any injury from which she

suffered that was not caused by the violation of her rights by the defendants.  But you may award damages if the injury or condition was made worse by the defendants' violation of the plaintiff's rights.  You should not award compensatory damages for speculative injuries, but only for those injuries that a plaintiff has actually suffered or which she is reasonably likely to suffer in the near future.  You may, however, compensate a plaintiff to the extent that you find that she was injured by the defendants' violations of her rights.

The damages that you award must be fair and reasonable, and neither inadequate nor excessive.  Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendants.

I remind you again that compensatory damages must not be based on speculation or sympathy.  Compensatory damages must be based only on the evidence presented at trial.  Should you decide to award damages, computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  In all instances, you are to use sound discretion and dispassionate common sense in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

### 3. Punitive Damages

Sand, Instruction 88-72; 42 U.S.C. § 1981a(b)(1); *Luciano v. Olsten Corp.*, 110 F.3d 210, 219-220 (2d Cir. 1997); *Cush-Crawford v. Adchem Corp.*, 271 F.3d 352, 356 (2d Cir. 2001); *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 115 (2d Cir. 2015); *Zimmerman v. Associates First Capital Corp.*, 251 F.3d 376, 385 (2d Cir. 2001); *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 545-46 (1999).

Whether or not you award a plaintiff compensatory damages, you may also, in your discretion, make an award of punitive damages.

If you find in favor of a plaintiff for a given claim, then you may award that plaintiff punitive damages with respect to that claim. To award a plaintiff punitive damages, you must find that the acts or omissions of the defendants were done with malice or reckless indifference to the rights of the plaintiff, which the plaintiff may prove by a preponderance of the evidence that defendants' conduct was motivated by evil motive or intent, or involved reckless or callous indifference to the plaintiff's federally protected rights. Plaintiffs do not need to have established that the defendants committed egregious or outrageous acts with respect to the given plaintiff.

You may not award punitive damages if you find that defendants proved that they had an antidiscrimination policy and they made a good faith effort to enforce it with respect to a given plaintiff.

Punitive damages are not separately available for violations of the NYSHRL.

**PART IV: DELIBERATIONS**

Now that I have outlined for you the rules of law applicable to the charges in this case and the processes by which you should weigh the evidence and determine the facts, I will give you some guidance for use in your deliberations.

**1. Selection of a Foreperson**

Sand, Instruction 78-5.

When you retire, you should select one member of the jury as your foreperson.  That person will preside over the deliberations and speak for you here in open court.  His or her opinion and vote are entitled to no greater weight than that of any other juror.

**2. Duty to Deliberate**

Sand, Instruction 78-3.

You will now return to decide the case.  In order to prevail on a claim, any given plaintiff must sustain her burden of proof as I have explained to you with respect to each element of that plaintiff's claims.  If you find that a plaintiff has succeeded, you should return a verdict in her favor on that claim. If you find that a plaintiff failed to sustain her burden on any element of a claim, you should return a verdict for the defendants on that claim.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of

54

you must decide the case for himself or herself, but you should do so only after a consideration of the evidence with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

### 3. Right to See Evidence

Sand, Instruction 78-1.

You are about to go into the jury room and begin your deliberations.  During those deliberations you may have any of the testimony read back to you.  Please remember that it is not always easy to locate the testimony you might want, so be as specific as you possibly can in requesting portions of the testimony.  Please

provide the name of the witness and describe the subject of the testimony you would like read back.  We will send the exhibits that were admitted into evidence into the jury room so that you may consider them during your deliberations.

### 4. Communications with the Court

Sand, Instruction 78-3.

Any communication with the court, including your requests for exhibits or testimony, should be made to me in writing, dated and signed by your foreperson, and given to one of the marshals outside the jury room.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.  You will receive a copy of these instructions.

### 5. Communication with Others

Committee on Court Administration and Court Management.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case, except among your fellow jurors in the jury room.  You may not use any electronic device or media, such as a telephone, a cell phone, smart phone, iPhone, Blackberry, or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, SnapChat, Instagram, LinkedIn, YouTube, or Twitter, to communicate to anyone

56

any information about this case or to conduct any research about this case until I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 6. **Return of Verdict**

Sand, Instruction 78-6, 78-8.

I have prepared a verdict form for you to use in recording your decision.  On the verdict form, there are spaces to indicate your verdict on each of the plaintiffs' claims against the defendants and, if necessary, to include damages amounts to be awarded.  You must return a verdict on each claim.  Your verdict must be unanimous and must reflect the conscientious judgment of each juror.  The foreperson should record the unanimous decision of the jury by checking the appropriate boxes on the verdict form, and initial each mark.

When you have reached a verdict, simply send me a note signed by your foreperson that you have reached a verdict.  Do not indicate in the note what the verdict is.  Your foreperson will fill in the verdict sheet that has been given to you, sign and date it, and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that you should be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

### 7. Conclusion

Your oath, that is the oath you took at the beginning of your service, sums up what your duties are – that is, that you will well and truly try the issues before the court and between the parties according to the evidence that has been given to you and according to the laws of the United States.